No. 32,203

Josiah E. Hammond, *Appellant*, v. Illinois Bankers Life Assurance Company, *Appellee.*

(46 P. 2d 626)

Opinion filed July 6, 1935.

*J. N. Tincher,* of Hutchinson, *Riley W. MacGregor* and *Herbert Hobble, Jr.,* both of Medicine Lodge, for the appellant.

*Adrian S. Houck, J. Raymond Eggleston,* both of Medicine Lodge, and *Donald Muir,* of Anthony, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action on a life insurance policy. Judgment was for defendant. Plaintiff appeals.

The facts are all admitted.

In 1926 Inez Hammond, the wife of plaintiff, purchased a life insurance policy with the Illinois Bankers Life Association. Plaintiff was the beneficiary named in the policy. Insured paid the premiums on this policy until January 29, 1931. About that time this company was taken over by the Illinois Bankers Life Assurance Company.

On December 10, 1931, a certificate was issued to Inez Hammond. This certificate became a part of the policy sued on. By the terms of this certificate Mrs. Hammond received a credit in excess of $100 with defendant. It is known as a survivorship-fund certificate.

Mrs. Hammond paid the premiums due on the policy up to the

premium due October 29, 1932. Thirty days prior to that date defendant notified her as to when the premium would be due and the amount of it. Later defendant notified Mrs. Hammond that unless the premium of $25.25 was paid on or before November 29, 1932, her policy would lapse.

On November 25, 1932, defendant mailed to Mrs. Hammond a premium-extension agreement and contract drawn to mature August 1, 1933. At the same time Mrs. Hammond was notified that upon receipt of the extension agreement and the payment of $20 cash on or before November 29, 1932, the policy would be continued in force.

On November 29, 1932, Mrs. Hammond signed the extension agreement and mailed it to defendant, together with a check for $20 drawn on the Coats State Bank payable to defendant and signed by plaintiff.

The extension agreement was received by defendant on December 1, 1932.

On December 6, 1932, a premium receipt showing the policy to be in good standing until August 1, 1933, was issued by defendant and mailed to Mrs. Hammond.

When the check for $20 that has been spoken of was finally presented to the Coats State Bank, payment of it was refused on account of insufficient funds.

On December 17, 1932, defendant advised Mrs. Hammond that the check had been turned down and on that account the credit she had with the company had been canceled and her policy had lapsed. She was advised that the policy would be reinstated if she was found to be reinsurable by the company after an examination and would send defendant a valid remittance of $20.

Upon receipt of this letter Mrs. Hammond mailed defendant a draft for $20. At that time Mrs. Hammond could not pass an examination for insurance.

The draft just spoken of and the premium-extension agreement were retained by defendant until February 3, 1933. On that date they were returned to Mrs. Hammond.

Mrs. Hammond died from cancer on February 28, 1933.

From the time of the attempted cancellation of the policy until her death Mrs. Hammond was unable to pass an insurance examination.

Proof of death was made and payment of the policy was refused. This action followed. The facts were agreed to as they have been

stated here. Judgment was given for defendant. The appeal is from that judgment.

It is the contention of defendant that in order to keep the policy in force the payment of $20 should have been made; that the giving of the check which was not good constituted no payment at all as far as the $20 is concerned; and that when that payment was not made before the final due date the situation was the same as though nothing had been done by Mrs. Hammond, and the policy lapsed.

Appellant contends that when the first check for $20 was accepted by defendant, together with the extension agreement, and the policy was extended to August 1, 1933, that defendant could not subsequently cancel the policy without giving the notice required by the statute.

We will examine the premium-extension agreement. It reads as follows:

"On or before August 1, 1933, after date, without grace and without demand or notice, I promise to pay to the Illinois Bankers Life Assurance Company, at its office in Monmouth, Illinois, for value received, the sum of seventy-five and 30/100-dollars ($75.30), with interest at the rate of six percent per annum from date, and with attorney's fees. This promise to pay is accepted by the company at the request of the promisor, together with twenty and no/100 (cash) dollars deposited in cash on the following express agreement:

"The time of payment of the premium of $95.30, due on the 29th day of October, 1932, under the terms of policy No. 324885, issued by the company on the life of Inez Hammond, is hereby extended until midnight of the due date of this obligation, and if payment in full is made on or before this due date, such payment, together with the cash deposit heretofore referred to, shall be accepted by the company in full payment of the above-named premium, and all rights under the policy shall be the same as if the premium had been promptly paid when due. I understand and hereby agree that if this premium extension agreement is not paid at maturity, said policy shall, without notice or any affirmative act on the part of the company or any of its officers or agents, be null and void, and the policy shall automatically cease to be a claim against the company, and the company shall retain the cash deposit as part compensation for the rights and privileges herein granted; and that this premium extension agreement and accrued interest shall, without rebate or discount and without reviving said policy or any of its provisions, be collectible without relief from valuation or appraisement laws, for the proportion of its face, with interest, that the time the insurance has been continued by this premium extension agreement bears to the whole time covered by said premium. I understand and agree that neither this premium extension agreement nor any extension thereof is given or accepted as a payment of said premium."

The premium-extension agreement receipt which was mailed to Mrs. Hammond on December 6, 1932, or seven days after the date set for final payment, is as follows:

"Will be due August 1, 1933.

"Received of policyholder mentioned herein premium-extension agreement of—

"............Seventy-five and 30-100...........dollars ($75.30), together with............ twenty and no/100 (cash) dollars deposited in cash.

"This receipt is given and promise to pay accepted by the company at the request of the promisor on the following express agreement:

"The time of payment of the premium of $95.30 due on the 29th day of October, 1932, under the terms of the policy No. 324885 issued by the company on the life of Inez Hammond is hereby extended, until midnight of the due date of this obligation, which shall be the due date of said premium as extended, and if payment in full is made on or before this extended due date, such payment, together with the cash deposit heretofore referred to shall, be accepted by the company in full payment of the above-named premium and all rights under the policy shall be the same as if the premium had been paid in cash. If such payment is not made in full on or before maturity, the policy shall automatically cease to be a claim against the company, and the company shall retain the cash deposit as part compensation for the rights and privileges herein granted. The promisor acknowledges that this premium-extension agreement and accrued interest, shall, without rebate or discount and without reviving said policy, or any of its provisions, be collectible without relief from valuation or appraisement laws for the proportion of its face, with interest, that the time the insurance has been continued by this premium-extension agreement bears to the whole time covered by said premium. The grace period provided in said policy shall not apply to this premium-extension agreement."

The letter transmitting the premium-extension agreement receipt to Mrs. Hammond was as follows:

"Dear Madam: *In re* 324885.

"We are enclosing premium-extension agreement receipt showing your insurance in good standing until August 1, 1933, at which time this extension is due. If paid at maturity this will cover your premiums up to October 29, 1933.

"This department is maintained to serve you and we will be more than glad to be of insurance service to.you at any time."

It will be noted that the first paragraph of the agreement is in form a promissory note; the agreement then extends the due date for the premium until the due date of the agreement, which was August 1, 1933. If the agreement was paid when due then such payment, together with the $20 cash, were to be accepted by defendant as a full payment of the premium.

The agreement then provided that if not paid at maturity the

policy should be void and the agreement should be collectible for the proportion of its face, with interest, that the time the insurance had been continued by the agreement bore to the whole time covered by the premium. It will be noted that the last sentence in the agreement was as follows: "I understand and agree that neither this premium-extension agreement nor any extension thereof, is given or accepted as a payment of said premium."

It will be noted that the premium-extension agreement receipt acknowledged the receipt of the premium-extension agreement and the $20 cash. It further recited the extension of the due date of the premium until August 1, 1933. The receipt then recited how the amount of the extension agreement could be collected. The concluding sentence in the receipt was as follows: "The grace period provided in said policy shall not apply to this premium-extension agreement."

When defendant discovered that the check for the cash payment was not paid for lack of funds and attempted to cancel the policy it retained this agreement. When the good draft for $20 was forwarded to defendant by Mrs. Hammond it was received and retained by the company for about forty-five days. What was the effect of this? Here was a promise on the part of Mrs. Hammond to pay part of the premium on a certain date, also a good draft for the amount required. If the amount of the promise was not paid when due action could be brought to collect it. The company could not retain this promise and the draft and at the same time cancel the policy. We cannot say that there was total failure of the insured to pay on the due date when an unconditional promise to pay was made by her and accepted and retained by the company. It is much the same as though the payment had been made by two checks—one good and one bad. No one would argue that the company could keep the money it received on the good check and at the same time cancel the policy. The agreement recites that it was not given as a payment of the premiums, but by its terms it is an unconditional promise to pay and by its terms it operated to keep the policy in effect.

Defendant points out that all notices sent to insured had printed on them the following clause:

"Remittance by check, bank draft, or money order will be considered payment of any amount due, provided such check, draft or money order is actually paid to the company on presentation in due course of business; and the issu-

ance of a receipt for such check, draft or money order shall not constitute a waiver of this provision."

It is argued that on account of this provision the giving of the bad check as a cash payment was of no avail. The trouble with that argument is that the company did not take the trouble to attempt to collect the check for $20 before extending the due date of the premium. It extended the due date and continued the policy in force before ascertaining whether the check was good or not. Then when it found that the check was not good it advised the insured that the policy had lapsed, but retained the extension agreement. If defendant desired to cancel the policy it should have returned the premium-extension agreement. When it received the draft it should have returned that. The agreement provides by its terms that it shall be collectible for the proportion of its face, with interest, that the time the insurance has been in effect bears to the whole time covered by the premium. Hence the company was secure at all times.

The insurance company made a valid extension agreement, assured died within the extension period, and the rights of the parties became fixed.

The judgment of the trial court is reversed with directions to render judgment for plaintiff for the amount sued for with interest.