No. 33,023

Sadie J. Brown, *Appellee*, v. Illinois Bankers Life Assurance Company, *Appellant*.

(63 P. 2d 165)

Opinion filed December 12, 1936.

A. C. Malloy, Roy C. Davis, Warren H. White, all of Hutchinson, *Hugh T. Martin, L. W. Melburg* and *E. H. Henning,* all of Monmouth, Ill., for the appellant.

*Walter F. Jones* and *C. E. Chalfant,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover on a life insurance policy. Plaintiff prevailed, and defendant appeals.

The action was tried to the court without a jury on issues joined by pleadings consisting of a petition and answer and on an agreed statement of facts. The stipulation is quite lengthy and contains numerous important exhibits. Both stipulation and exhibits are appended to the opinion and made a part hereof. A careful reading of the stipulation is essential to a clear understanding of the facts in this lawsuit. Plaintiff will be designated as "insured" and defendant as the "company."

The policy was issued January 15, 1931, and provided for a thirty-one-day grace period. Insured died May 6, 1933. There is no controversy concerning the payment of premiums for the years 1931 or 1932. The first quarterly premium for the year 1933, in the sum of $10.55, was due January 15. Such payment would have kept the policy in full force until April 15. In a notice dated January 5, and received by insured on or about January 7, insured was informed of the due date of the quarterly premium on January 15, and also of the company's intention to forfeit the policy if the premium were not paid on or before the expiration of the grace period. (Exhibit A.) While such notice prior to the due date of the premium was not permitted under some earlier statutes and decisions based thereon, such notice was permitted under the new statute applicable to this policy, which provided for a grace period of not less than thirty days or one month. (R. S. 1933 Supp. 40-411; *Wegner v. Federal Reserve Life Insurance Co.,* 130 Kan. 600, 607, 287 Pac. 591; *Minnesota Mutual Life Insurance Co. v. Cost,* 72 F. 2d 519, 523.) The grace period under this policy ended February 15.

A premium extension agreement was executed subsequent to the notice of intent to forfeit. (See Exhibits B and C.) This subsequent agreement granted insured an additional thirty-day period beyond the grace period, namely, to March 15, 1933.

On behalf of plaintiff it is contended insured was entitled to a notice of forfeiture at the expiration of the extension agreement, March 15, 1933, and a thirty-day period of grace thereafter within which to pay the premium. With this contention the trial court agreed and on it the decision was based. The company contends that having on January 5, 1933, given a notice of intent to forfeit

if the quarterly premium was not paid by the end of the grace period, February 15 (see Exhibit A), it was not necessary to give an additional notice of intent to forfeit when a subsequent premium extension agreement was executed which extended the time to pay the premium due on January 15, 1933, to March 15, 1933. The company insists the terms and conditions of the subsequent agreement determined the life of the policy.

A portion of the letter (Exhibit C) sent with the extension agreement reads:

"Please read carefully the terms of this extension. You will observe it is a contract instead of an ordinary note."

The pertinent portion of the extension agreement provided:

"I understand and hereby agree that if this premium extension agreement is not paid at maturity, said policy shall *without notice* or *any affirmative act* on the part of the company or any of its officers or agents, *be null and void and the policy shall automatically cease to be a claim against the company,* . . . ." (Italics inserted.)

The statute authorizing this subsequent agreement provides:

"A life insurance company may enter into subsequent agreements in writing with the insured, *which need not be attached to the policy,* to extend the time for the payment of any premium, or part thereof, *upon condition that failure to comply with the terms of such agreement shall lapse the policy as provided in said agreement.* Subject to such lien as may be created to secure any indebtedness contracted by the insured in consideration of such extension, said agreement shall not impair any right existing under the policy." (R. S. 1933 Supp. 40-416.) (Italics inserted.)

Two notices dated respectively March 3 and March 10 were mailed by the company and received by insured prior to March 15, reminding insured the extension agreement provided the insurance would lapse if premium were not paid by March 15. (Exhibits D and E.) The premium was not paid by March 15. On March 21 the company wrote a letter received by insured on or about March 23, advising the policy had automatically lapsed for failure to pay the premium on the date provided by the extension agreement. (Exhibit F.) On March 31 insured mailed a money order in the sum of $10.75. By letter of April 5, received by insured on April 7, the receipt of the money order was acknowledged and the company requested insured to make application for reinstatement of the policy. (Exhibit G.) Accompanying the application for reinstatement was a money order dated April 29, for the sum of $10.55. In the application insured acknowledged forfeiture of the policy,

except as might be otherwise provided in the policy. (Exhibit J.) The policy contained no provision which avoided the forfeiture. The first money order was erroneously endorsed by an employee of the company, but was not presented for payment. The two money orders were retained by the company with the intention on its part to pay for premiums on the policy in the event it was reinstated. (See Exhibit G, and Stipulation ¶ 6.) No objection of insured to the retention of the money orders for that purpose appears. Prior to commencement of this action plaintiff's attorney was notified the money orders were the property of insured's estate and the company would deliver them to the administrator or to such person legally entitled thereto, upon being notified to whom they should be delivered. No such advice was received and when the company filed its answer the money orders were delivered into court with the answer. (Stipulation ¶ 6.) It was also agreed what disposition should be made of the money orders in event the company was not liable on the policy. (Stipulation ¶ 11.)

Complaint is also made with regard to the retention by the company of the extension agreement, which included a note for $10.55 as an obligation for the extension agreement. The facts are not analogous to those in the cited case of *Hammond v. Illinois Bankers Life,* 142 Kan. 268, 46 P. 2d 626. There it was contended the extension agreement was not in effect because the check given in payment thereof was not cashable for want of funds, and yet the company retained the extension agreement. Insured died within the period of the extension agreement. In the instant case it is not contended the extension agreement was not in effect until March 15, and insured had the full benefit of the extension agreement. Furthermore, insured in the instant case died after the extension agreement had spent its force and the policy had lapsed. By the time the company received the application for reinstatement it had been informed of some illness of insured. The policy was never reinstated.

The trial court permitted recovery and held the case was ruled by the modified opinion in *Hammond v. Illinois Bankers Life.* This decision the trial court construed as holding that when an extension agreement is entered into, a policy will not lapse until due notice of intent to forfeit is given after the extension agreement becomes due. The notice to which the trial court referred was that provided by R. S. 1933 Supp. 40-411. The pertinent portion thereof reads:

". . . That in lieu of the notice hereinbefore provided, in the case of policies providing for a period of grace of not less than thirty days, or one month, for the payment of premiums and containing any provision for cancellation or forfeiture in case of nonpayment of premiums at the end of such period, the insurance company may, not more than thirty days prior to the date specified in such policy when any premium will become due and payable without grace, in like manner notify the insured under any such policy, of the date when such premium will fall due, stating the amount thereof, and its intention to forfeit or cancel the same if such premium be not paid within the period of grace provided in the policy; . . ."

Neither R. S. 1933 Supp. 40-411 nor 40-416 was discussed in the opinion in the Hammond case. It was not decided in either of these statutes. The Hammond case presented only an issue of whether, under the facts in that case, there could be recovery on behalf of insured when the insured died within the period of the extension agreement. That is not the issue in this lawsuit. Had insured died within the extension agreement in the instant case, that is, on or before March 15, we would have an entirely different question than the one now presented. The modified opinion in the Hammond case does not rule this case. It should be here noted, however, that so far as the record before us discloses, the trial court's attention was not directed to R. S. 1933 Supp. 40-416. Neither do we find it mentioned by counsel for insured in their brief. This court, however, cannot ignore it.

The first question before us is, therefore, whether an additional notice of intent to forfeit is required under provisions of R. S. 1933 Supp. 40-411, where such notice has once been given and a subsequent premium extension agreement has been entered into in good faith and in compliance with the provisions of R. S. 1933 Supp. 40-416. In support of insured's contention we are also referred to *Cunningham v. Insurance Co.,* 106 Kan. 631, 189 Pac. 158, and *Clover v. Bankers Life Co.,* 117 Kan. 683, 232 Pac. 1068. We fail to see how those decisions help insured under the present law. They were decided in 1920 and 1925, and are based on statutes repealed and amended in 1925, and again in 1927. They were decided prior to the enactment of the 1927 insurance code, which for the first time contained a statutory provision which expressly provided for *subsequent* agreements in writing and which need not be attached to the policy, as is ordinarily required with regard to similar instruments. It appears the legislature clearly intended in that code to supplement existing legislation on the subject. It must be assumed it was

intended to supply some want, to fill some deficiency, to add something to make existing legislation more complete. In fact, that was the purpose of the code. In the early case of *City of Emporia v. Norton,* 16 Kan. 236, it was held:

"It will not be imputed to the legislature that it intended to go through the form and time and expense of legislation to accomplish nothing, or to do that already fully and completely done." (Syl. ¶ 3.)

In *Craig v. Craig,* 143 Kan. 624, 56 P. 2d 464, it was said:

"In determining the intent of the legislature the court is not limited to a mere consideration of the words employed but should look to the existing conditions, the causes which impelled the enactment, and to the objects sought to be attained." (p. 628.) (See cases therein cited.)

We might also say the words actually employed in R. S. 1933 Supp. 40-416 quite clearly disclose its intent and purpose. It must be assumed the legislature knew of the former statutes providing for grace periods and notices of forfeiture. When it framed the 1927 insurance code it retained in amended form the forfeiture provisions, R. S. 1933 Supp. 40-410 and 40-411. It went further, however, and made provision for a contract to supplement all of these provisions, and hence we now have R. S. 1933 Supp. 40-416. It expressly provides the condition upon which a subsequent agreement may be made, to wit:

". . . upon condition that failure to comply with the terms of such agreement shall lapse the policy *as provided in said agreement.*" (Italics inserted.)

This statute either means what it says or it means nothing. It does not say, "shall lapse the policy *as provided by the policy,*" or "shall be forfeited *as provided by previous sections of this act,*" but it expressly says, "shall lapse the policy as provided in *said agreement.*" Now, this subsequent agreement gave insured thirty days, in addition to the grace period allowed in the policy. We cannot now arbitrarily brush aside the later enactment providing for subsequent agreements and also the extension agreement made pursuant thereto, as constituting futile gestures. In *Lincoln Nat. Life Ins. Co. v. Hammer,* 41 F. 2d 12, the court said:

"However, we think the point is settled by the supreme court of North Dakota in *Kroksather v. Western Union Life Ins. Co.,* 49 N. D. 619, 193 N. W. 48. It is there held that:

" 'Where a premium is not paid within the time stipulated in the policy, and where within the grace period an extension agreement is entered into, evidenced by a note and a conditional receipt, the provisions of such note and conditional receipt with reference to termination of the policy upon nonpayment are controlling.'

"This statement exactly fits the circumstances of the case at bar. The body of the opinion states the proposition thus:

"'An extension beyond the grace period in the policy is no part of the policy contract and depends entirely for its effect upon such collateral agreement as may be made controlling it. If, therefore, a policyholder takes the benefit of the delay or extension contracted for in a separate agreement, he is bound to perform the conditions on which it is granted, or to submit to the consequences of the failure to so perform.'" (p. 19.)

It therefore follows the policy lapsed at midnight of March 15 and an additional notice of intent to forfeit was not necessary thereafter.

It is next contended on behalf of insured the letters of March 3 and 10 in which insured was reminded of the terms and due date of the premium under the extension agreement, did not constitute notices of intent to forfeit. Decisions are cited in support of that contention. Having held no additional notice was necessary, this contention becomes immaterial.

On behalf of insured it is next urged the period in which insured had to pay the premium due March 15, under the extension agreement, was further automatically extended thirty days by virtue of chapter 203 of the Laws of 1933 (R. S. 1933 Supp. 40-105c, 40-105d), and an order of the commissioner of insurance made pursuant to that act under date of March 7, 1933. (For order see second exhibit B at end of other exhibits.) The company contends the above act and the order of the commissioner approved by the governor are void in that they violate article 2, section 1, of the state constitution, and article 1, section 10, of the constitution of the United States.

On behalf of insured our attention is further directed to supervisory power of the commissioner of insurance in addition to that provided by the act of 1933, as contained in R. S. 1933 Supp. 40-103. The latter provides:

"The commissioner of insurance shall have general supervision, control and regulation of corporations, companies, associations, societies, exchanges, partnerships, or persons authorized to transact the business of insurance, indemnity or suretyship in this state and shall have the power to make all reasonable rules and regulations necessary *to enforce the laws of this state relating thereto.*" (Italics inserted.)

It will be observed the scope of the power granted in the last-quoted statute deals first with general supervision, control and regulation. The second grant of power is to make rules and regulations. This later grant, however, is specifically limited and restricted to the making of reasonable rules and regulations *necessary to enforce the laws of this state relating to insurance business.* The company makes no objection to the provision of that law.

That is not a grant of power to make new rules and regulations which supersede existing laws enacted by the constituted law-making body. The 1933 act, after granting authority to the commissioner to make rules and regulations, subject to the approval of the governor, goes further and provides:

". . . Upon the adoption and promulgation of any such rule or regulation, *any law or any part of any law which may be in conflict with any such rule or regulation is hereby suspended and shall continue to be suspended so long as such rule or regulation continues in force and effect* . . ." (R. S. 1933 Supp. 40-105c.) (Italics inserted.)

The grace period of the policy in the instant case ended February 15. The order of the commissioner was dated March 7. If it be assumed the 1933 act applied to a policy such as this, where the company itself just previous to the commissioner's order had voluntarily granted a thirty-day extension, we still have the question of whether the legislature had the constitutional power to delegate legislative power as was attempted by this act.

Assuming extraordinary conditions existed, and it must be admitted that was true, did that fact create or enlarge the power to delegate legislative functions without prescribing any standards whatsoever, aside from the general purpose of establishing safe and sound methods for the transaction of insurance business within this state and for the purpose of safeguarding the interests of policyholders, creditors and shareholders? This is not a case where the legislature, after announcing a definite policy, established necessary standards and then delegated to the commissioner of insurance the power to make *subordinate* rules and regulations whereby the declared policy was to be made effective. The contrary is true concerning the act involved. Here power was attempted to be delegated without prescribed standards and to enact not *subordinate* rules and regulations, but rules and regulations which would supersede any and all existing laws, or parts thereof, in conflict therewith.

In *Schechter Corp. v. United States*, 295 U. S. 495, 55 S. Ct. 837, 79 L. Ed. 1570, a unanimous court held.

"Extraordinary conditions do not create or enlarge constitutional power, and cannot justify governmental action outside the sphere of constitutional authority." (Headnote, ¶ 1.)

"Legislative power is unconstitutionally delegated by the provisions of § 3 of the National Industrial Recovery Act of June 16, 1933, authorizing the making of codes for the government of trades and industries by or with the approval of the President of the United States, without setting up any stand-

ards aside from the statement of the general aim of rehabilitation, correction and development of trades and industries." (Headnote, ¶ 3.)

"So long as a policy is laid down and a standard established by a statute, no unconstitutional delegation of legislative power is involved in leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply." (Headnote, ¶ 4.)

From where did the legislature obtain authority to delegate power to adopt rules and regulations which would supersede any and all existing laws? The constitution of this state vests the legislative power in its house of representatives and senate. (Art. 2, § 1.) The question of unauthorized delegation of legislative power is not a new one in this state. It has been held similar legislative power could not be so delegated. (*Oakland State Bank v. Bolin,* 141 Kan. 126, 40 P. 2d 437; *Langworthy v. Kadel,* 141 Kan. 250, 39 P. 2d 443, and cases therein cited.)

We are not required in this case to declare the so-called insurance moratorium act unconstitutional for all purposes and under all circumstances, and we do not do so. In fact, we would be reluctant to do so. That its purpose and intent was a beneficent one, and that insurance companies and insured alike sought and found certain shelter under some orders of the insurance commissioner made pursuant to that act, cannot be doubted. We are, however, constrained to hold that as applied to the facts in this particular case—and that is all we are now deciding—the act constituted unauthorized delegation of legislative power. In view of this conclusion, other contentions urged need not be discussed.

The judgment is therefore reversed with instructions to enter judgment for defendant.

HARVEY and SMITH, JJ., dissenting.

---

## STIPULATION

It is hereby stipulated and agreed between the parties hereto, by their respective attorneys duly authorized, that in lieu of taking depositions of the officers and employees of the defendant, the following are the facts which would be produced at the taking of such depositions, and that said facts may be read and used in evidence in the trial of this cause:

1. That the defendant is a life insurance company, duly and legally organized and incorporated under and by virtue of the laws of the state of Illinois, with its principal place of business and home office at Monmouth, Ill. That it is now and was at all times, material to this proceeding, legally authorized to do business in the state of Kansas.

2. That on the 15th day of January, 1931, the defendant issued a policy of life insurance upon the life of Wayne S. Brown, for the face amount of one thousand ($1,000) dollars, which policy was numbered 323796, which said policy was duly delivered to and accepted by the said [Wayne] S. Brown. That the plaintiff, Sadie J. Brown, was designated as beneficiary in said policy. That exhibit A, attached to the original petition filed herein, is the original policy.

3. That the said Wayne S. Brown died on the 6th day of May, 1933.

4. That by letter dated the 12th day of May, 1933, and received by the defendant on May 15, 1933, plaintiff notified the defendant of the death of the said Wayne S. Brown, and requested blanks for making proof of death. That defendant denied liability under said policy, marked "Exhibit A" and attached to the original petition filed herein, and refused to send blanks upon which to make proof of death.

5. That at the time of the delivery and acceptance of said policy, on or about the 15th day of January, 1931, the said Wayne S. Brown paid an annual premium thereon, of $39.80, which paid the premium to January 15, 1932. That on or about January 13, 1932, the said Wayne S. Brown elected to pay premiums on said policy on a quarterly basis. That said Wayne S. Brown paid quarterly premiums of $10.55, due January 15, April 15, July 15 and October 15, in the year 1932. That said quarterly payment of October 15, 1932, paid the premiums on said policy to January 15, 1933. That on January 15, 1933, a quarterly premium of $10.55 became due on said policy. That on the 5th day of January, 1933, the defendant deposited in the United States post office at Monmouth, Ill., a notice of said premium and notice of intention to cancel and forfeit said policy if such premium be not paid within the period of grace provided in said policy, which said notice was enclosed in an envelope addressed as follows:

Wayne S. Brown,
1025 East B,
Hutchinson, Kansas.

which envelope was sealed at time of deposit in the United States post office, at Monmouth, Ill., and had sufficient postage affixed thereto for its transmission and delivery. That said notice was received by the said Wayne S. Brown on or about the 7th day of January, 1933, and that the original of said notice is attached to plaintiff's amended petition and marked "Exhibit Y," and attached hereto and made a part hereof is a true and correct copy of said notice, marked "Exhibit A." That on January 23, 1933, the said Wayne S. Brown requested additional time for the payment of said premium. That in pursuance of said request and on January 26, 1933, defendant mailed to the said Wayne S. Brown a premium extension agreement, to be executed by him and returned to the defendant. That said premium extension agreement was duly signed by the said Wayne S. Brown and returned to the home office of the defendant on February 8, 1933. That attached hereto is a true and correct photostatic copy of said premium extension agreement, duly signed by the said Wayne S. Brown and delivered by him to the defendant, marked "Exhibit B." That enclosed with said premium extension agreement, mailed to the said Wayne S. Brown on January 26, 1933, was a letter of the defendant company, a true and correct copy of which is hereto attached, marked "Exhibit C."

6. That said premium extension agreement was not paid on or before March 15, 1933. That by letter dated March 1, 1933, which was received by the said Wayne S. Brown on or about March 3, 1933, the defendant notified the insured that said premium extension agreement must be paid by March 15, 1933. That attached hereto, marked "Exhibit D," is a true and correct copy of said letter. That again, by letter dated March 10, 1933, which letter was received by the said Wayne S. Brown on or about March 12, 1933, the said Wayne S. Brown was notified to pay the premium extension agreement with interest thereon. That attached hereto, marked "Exhibit E," is a true and correct copy of said letter. That by letter dated March 21, 1933, and received by the said Wayne S. Brown on or about March 23, 1933, the said Wayne S. Brown was notified by the defendant said policy of insurance had lapsed for failure to pay the premium extension agreement. That attached hereto is a true and correct copy of said letter, marked "Exhibit F." That enclosed with said letter, copy of which is marked "Exhibit F," was a form of application for reinstatement of said policy. That on April 3, 1933, defendant received from the said Wayne S. Brown post-office money order, No. 641830, dated March 31, 1933, for the sum of $10.75. That by letter dated April 5, 1933, and received by said Wayne S. Brown on April 7, 1933, the receipt of this post-office money order was acknowledged and defendant requested said Wayne S. Brown to make application for reinstatement of the policy. That attached hereto, marked "Exhibit G," is a true and correct copy of said letter of defendant, dated April 5, 1933. That in reply to said letter and on April 10, 1933, defendant received from the said Wayne S. Brown a letter, a true and correct photostatic copy of which is hereto attached, marked "Exhibit H." That in reply to said letter, defendant wrote the said Wayne S. Brown on April 11, 1933, a letter, which was received by the said Wayne S. Brown on or about April 13, 1933, a true and correct copy of which is attached hereto and marked "Exhibit I." That on May 2, 1933, defendant received from the said Wayne S. Brown an application for reinstatement of said policy, duly signed by him, which application for reinstatement appears on its face to have been dated May 29, 1933, but which in fact was made and executed on April 29, 1933. That attached hereto and made a part hereof is a true and correct copy of said application for reinstatement, marked "Exhibit J." That accompanying said application for reinstatement was United States postal money order, No. 643744, dated April 29, 1933, for the sum of $10.55. That said post-office money order, No. 643744, for the sum of $10.55, and post-office money order, No. 641830, for the sum of $10.55, were retained by the defendant with the intention on the part of defendant to pay for premiums on said policy in the event said policy was reinstated. That said post-office money orders were never presented for payment and were never paid and were not accepted by the defendant in payment of said premium extension agreement, due March 15, 1933, and quarterly premium of $10.55, due April 15, 1933, but defendant contends were accepted only on condition that said policy was duly reinstated. That said defendant notified plaintiff's attorney before the commencement of this proceeding that said post-office money orders were the property of the estate of said Wayne S. Brown and that defendant would deliver the same to the administrator of the estate of said Wayne S. Brown, or to such person legally entitled thereto, upon being

notified to whom the same should be delivered. That defendant was not notified the person or persons entitled to said money orders and retained the same in its possession until the filing of the answer herein, at which time they were delivered into court with such answer.

7. That said application for reinstatement, a copy of' which is hereto attached, marked "Exhibit J," was never approved by the medical director of the defendant company, as provided by the terms thereof, and said policy was never reinstated by said defendant company.

8. That on the 15th day of January, 1933, and at all times thereafter, said policy, No. 323796, issued by the defendant on the life of Wayne S. Brown, was security for a certificate of loan, executed by the said Wayne S. Brown on January.15, 1931, for the principal sum of three hundred forty-one and 52/100 dollars ($341.52), which certificate of loan bore interest at the rate of six (6) percent per annum, a true and correct copy of which is hereto attached, marked "Exhibit K." That on said January 15, 1933, and at all times thereafter, said certificate of loan, together with interest thereon, was greater than the reserve accumulated under said policy, and was greater than the cash value, paid-up insurance value and extended term insurance value provided in said policy, and that on the 15th day of January, 1933, and at all times thereafter, said policy had no cash value, paid-up insurance value, or extended term insurance value.

9. That said application for reinstatement, "Exhibit J," was apparently intended by the said Wayne S. Brown to have been dated April 29, 1933, instead of May 29, 1933, inasmuch as same was received by defendant on May 2, 1933, and inasmuch as the said Wayne S. Brown died on May 6, 1933; that the defendant, upon receipt of said application, promptly made inquiries through the usual sources concerning the physical condition and insurability of the said Wayne S. Brown for the purpose of determining whether said application should be approved and whether a medical examination of said applicant was advisable or necessary in connection therewith, and thereupon learned that the said Wayne S. Brown had just passed away.

10. That the order of the commissioner of insurance of the state of Kansas, copy of which is attached to the original petition filed herein and marked "Exhibit B," said copy being hereby agreed to be a true and correct copy, and said copy being incorporated herein by reference, was made by said commissioner of insurance and approved by the governor of the state of Kansas on March 7, 1933.

11. That one of the post-office money orders above referred to, to wit, serial No. 641830 in the amount of $10.75, was erroneously endorsed by an employee in the office of the defendant company in the name of the defendant company, but was not presented for payment; and it is agreed that in event it should be determined in this action that the defendant is not liable for the face amount of the policy involved herein, said two United States postal money orders may either be delivered to the personal representative of the said Wayne S. Brown, deceased, for cancellation and refund, or cashed by the defendant and the proceeds delivered, at the option of the plaintiff and said personal representative or representatives.

12. No payments were made or tendered by the said Wayne S. Brown to defendant other than as stated herein.

682

13. That at the time of the receipt by the defendant of said application for reinstatement from the said Wayne S. Brown, the defendant had information of some illness of said Wayne S. Brown; and that the defendant would not have approved said application for reinstatement without investigation and medical examination which established that the said Wayne S. Brown was an insurable risk.

14. That on or about May 5, 1933, a letter copy of which is attached hereto as exhibit L hereof, was mailed to the Kansas representatives of the defendant.

15. This cause is hereby submitted upon the above and foregoing agreed statement of facts, the parties hereto hereby waiving all objections to the manner of proof of the facts herein stated, and each of the parties hereto reserving the right to object and contend that any of said admitted facts are irrelevant or immaterial.

EXHIBIT A

ILLINOIS BANKERS LIFE ASSURANCE CO.
MONMOUTH, ILLINOIS.

PREMIUM NOTICE

Notice is hereby given that a premium under the policy designated will become due and payable as stated below, provided said policy be then in force.

Payment to be made direct to the home office. Due date of premium, January 15, 1933. Amount of premium due, $10.55. 323796  1000  10-15-18 34 Q. Wayne S. Brown, 1025 East B, Hutchinson, Kansas. Return this notice with your remittance.                                                                 (over)

(Face side)

Pay at once—Avoid lapse

The premium stated on the other side hereof will be accepted if tendered within thirty-one days after the same shall have become due as set out, the policy meanwhile continuing in force; but in the event of the death of the insured during the said thirty-one days, the annual premium, or any unpaid installments thereof, will be deducted from any sum payable on account of the policy. Unless the premium be paid on or before the day it falls due or within 31 days thereafter, the policy and all payments thereon will become forfeited and void, except as to the values, if any, guaranteed by the policy, subject to any statute applicable thereto. Remittance by check, bank draft or money order will be considered payment of any amount due, provided such check, draft or money order is actually paid to the company on presentment in due course of business; and the issuance of a receipt for such check, draft or money order shall not constitute a waiver of this provision. In case of lapse, write the company for information or reinstatement. Return this notice with your remittance.

(Back side)

EXHIBIT B

Form 529—1-33-5m

PREMIUM EXTENSION AGREEMENT

No. 323796 P. 446. Monmouth, Illinois, January 26, 1933. On or before March 15, 1933, after date, without grace and without demand or notice, I promise to pay to the Illinois Bankers Life Assurance Company at its office in Monmouth, Illinois, for value received, the sum of ten and 55/100 dollars ($10.55), with interest at the rate of six percent per annum from date, and with attorney's fees. This promise to pay is accepted by the company at the request of the promisor, together with no dollars deposited in cash on the following express agreement: The time of payment of the premium of $10.55

due on the 15th day of January, 1933, under the terms of policy No. 323796 issued by the company on the life of Wayne S. Brown is hereby extended until midnight of the due date of this obligation, and if payment in full is made on or before this due date, such payment, together with the cash deposit heretofore referred to, shall be accepted by the company in full payment of the above-named premium, and all rights under this policy shall be same as if the premium had been promptly paid when due. I understand and hereby agree that if this premium extension agreement is not paid at maturity, said policy shall without notice or any affirmative act on the part of the company or any of its officers or agents, be null and void and the policy shall automatically cease to be a claim against the company, and the company shall retain the cash deposit as part compensation for the rights and privileges herein granted; and that this premium extension agreement and accrued interest shall without rebate or discount and without reviving said policy or any of its provisions, be collectible without relief from valuation or appraisement laws, for the proportion of its face, with interest, that the time the insurance has been continued by this premium extension agreement bears to the whole time covered by said premium. I understand and agree that neither this premium extension agreement nor any extension thereof, is given or accepted as a payment of said premium. $1000 1-15-33—4-15-33. Post office, 1023 East B, Hutchinson, Kansas, Wayne S. Brown, Hutchinson, Kansas, 1023 East B.

EXHIBIT C

ILLINOIS BANKERS LIFE ASSURANCE COMPANY
HOME OFFICE, MONMOUTH, ILLINOIS
JANUARY 26, 1933

Wayne S. Brown, 1023 East B, Hutchinson, Kansas.
    In re: No. 323796.
    DEAR SIR—In accordance with your request we enclose agreement for extension of time for payment of your life insurance premium on the above-mentioned policy. The amount of this agreement is $10.55. It matures March 15, 1933, and covers your premium from January 15, 1933, to April 15, 1933. It should be signed and mailed back to us prior to February 15, 1933, in order to prevent lapse of your insurance. Please read carefully the terms of this extension. You will observe it is a contract instead of an ordinary note. The only condition imposed is that you take care of it promptly at maturity as it cannot be renewed or extended. This extension of your premium is one of the many services given to policyholders of the Illinois Bankers Life Assurance Company. It is our way of helping you to continue your insurance in an emergency.
                                            Very truly yours,
                    G. H. LILLEY, Manager Conservation Department.

EXHIBIT D

ILLINOIS BANKERS LIFE ASSURANCE COMPANY
HOME OFFICE, MONMOUTH, ILLINOIS
MARCH 1, 1933

Wayne S. Brown, 1023 East B, Hutchinson, Kansas.
    In re: No. 323796.
    DEAR SIR—Your premium extension agreement of $10.55 and 9 cents interest, a total of $10.64, will be due March 15, 1933. This agreement must not be confused with an ordinary note and it is very important that its provisions be complied with to the letter. It provides that your insurance shall lapse if your remittance does not reach us on the date mentioned above. May we have your remittance in the business reply envelope that is enclosed and thus keep your insurance in force?
                                            Very truly yours,
                    G. H. LILLEY, Manager, Conservation Department.

EXHIBIT E

ILLINOIS BANKERS LIFE ASSURANCE COMPANY
HOME OFFICE, MONMOUTH, ILLINOIS

MARCH 10, 1934

Wayne Brown, Hutchinson, Kansas.
    *In re:* No. 323796.
    DEAR MR. BROWN—As a personal service may we again remind you of the extension agreement we hold on your policy. This agreement, with interest, is due March 15, 1933. The amount of your remittance should be $10.64. This contract provides that your insurance will lapse if the payment is not sent on or before maturity, and it is not our privilege to grant an extension or make a renewal of this agreement. Therefore, it behooves you to make remittance promptly, thus protecting your insurance. Possibly you have already sent payment to cover this contract. If you have, kindly disregard this letter, but if for any reason your remittance has not gone forward, we urge that the same be given your immediate attention. This extension was granted to you as a temporary accommodation, with the expectation that payment would be made at maturity. Your insurance has been in full force and effect during the time of this extension. We hope you will not allow this protection to slip away from you this time and that we may continue to serve you in the best possible way.
                                                            Yours very truly,
                    G. H. LILLEY, *Manager, Conservation Department.*

EXHIBIT F

ILLINOIS BANKERS LIFE ASSURANCE COMPANY
HOME OFFICE, MONMOUTH, ILLINOIS

MARCH 21, 1933

Wayne S. Brown, 1023 East B, Hutchinson, Kansas.
    *In re:* No. 323796.
    DEAR SIR—The premium extension agreement you gave us to cover the premium on the above-mentioned policy was due March 15, 1933. According to its terms your insurance automatically lapsed on that date. We cannot believe you want to lose this valuable protection, so we enclose application for reinstatement, which form we would be glad for you to complete and submit to us in connection with this reinstatement. The amount of the agreement and interest is $10.64 and covers your premium to April 15, 1933. We hope you will see your way clear to sign this application for reinstatement and send it to us with your remittance for the above amount. We assure you the same will then receive our prompt attention.          Yours very truly,
                    G. H. LILLEY, *Manager, Conservation Department.*

EXHIBIT G

                                                            April 5, 1933.
Wayne S. Brown, 1023 East B, Hutchinson, Kansas.
    *In re:* No. 323796.
    DEAR POLICYHOLDER—I have received the postal money order you sent to take care of the extension agreement on your policy numbered above. If you will return the application for reinstatement which we sent you on March 30, and this information proves satisfactory to the company, the remittance you have sent will cover your insurance to April 15, 1933. Another premium will be due on that date and if you wish you have thirty days additional time to take care of such payment. If you can do so it would be well for you to send this payment when you return the application for reinstatement, then if you are accepted for reinstatement, this will cover your insurance to July 15, 1933.
                                                            Yours very truly,
                        Manager Conservation Department.

## Exhibit H

Hutchinson, Kansas, April 7, 1933.
G. H. Lilley, Manager, Conservation Department,
Illinois Bankers Life Assurance Company, Monmouth, Illinois.
*In re:* No. 323796.

Dear Sir—I desire to know why my policy has lapsed when you state in your letter of April 5, 1933, that you have received the postal money order, which I sent you on March 31, 1933. The legislature of the state of Kansas passed emergency legislation extending 'till April 4th, the payment of all premiums due an insurance company. This law was in effect from about March 4th 'till April 4th, and was passed on account of the banking situation. You received the money due you, before Apirl 4th, and I do not understand why or how my policy could have lapsed, and wish to state that I wish to continue with this same policy. Will appreciate hearing from you. Sincerely yours.

Wayne S. Brown, 753 East C, Hutchinson, Kansas.

Notice: I have changed my mail address. Please send mail to this new number.

## Exhibit I

### April 11, 1933

Wayne S. Brown, 753 East C, Hutchinson, Kansas.
*In re:* No. 323799.

Dear Mr. Brown—I am answering the letter you wrote on March 7, about your policy numbered above. The extra period of grace referred to in my letter does not apply to your policy, because your premium was due on January 15 and the moratorium for Kansas policyholders applies to premium payments due on or after March 4. The remittance you sent us was to cover an extension agreement which matures March 15. When this agreement was not paid on or before maturity your policy automatically lapsed as of January 15. As I advised you in my previous letter the acceptance of this payment and the revival of your insurance is subject to your completing the application for reinstatement enclosed with this letter and which information is subject to acceptance by the company. If found satisfactory, we will be able to use the payment to cover your insurance up to April 15. That date is very near and if you do not send your request for reinstatement within a very few days you should include an extra payment of $10.55 to cover your insurance to July 15, 1933. I am glad to give you this explanation and hope you will complete this application promptly.

Yours very truly,
Manager Conservation Department.

## Exhibit J

#### APPLICATION FOR REINSTATEMENT

To the Illinois Bankers Life Assurance Co., Monmouth, Illinois.

I, the undersigned, having forfeited all claim under policy number 323796 in the Illinois Bankers Life Assurance Co., except as may be in said policy otherwise provided, which policy has lapsed for nonpayment of premium, hereby apply for reinstatement of insurance, and to induce said company to revive my said policy and reinstate the same, I do hereby represent that all statements and answers contained in my original application for said policy were true when made, and are now true, except as otherwise indicated herein. I further represent the following statements and answers to be strictly true:

(Here follow regular insurance examination questions.)

Note: The company reserves the right to require complete examination to be executed by one of the company's medical examiners at the policyholder's expense.

I understand and agree that the said policy shall not be restored until this application shall be approved by the medical director of the company,

and I agree that if said company shall grant such reinstatement the same shall be deemed to be based exclusively upon the representations contained in this application and in my original application for said policy, and upon the express condition that if the foregoing statements, or any of them, be in any respect untrue said company shall be under no liability by reason of the attempted reinstatement of the policy, except that the company shall return to the applicant or his personal representative all premiums paid since the date of said reinstatement.

Dated at Hutchinson, Kansas, this 29 day of May, 1933—B. W. Carlson, Witness to signature of Applicant; Wayne S. Brown, Signature of applicant.

## Exhibit K

### CERTIFICATE OF LOAN

This certifies that the Illinois Bankers Life Assurance Company, of Monmouth, Illinois, has loaned on policy No. 323796 (Company authorized to fill in policy number) the sum of three hundred forty-one 52/100 dollars, which with any additional loan, shall be a lien on said policy until paid; simple interest at the rate of six percent per annum to be added thereto until the end of the distribution period of said policy, at which time the profits accruing to it shall be used toward the payment of said loan, and any excess paid in cash or used as set forth in the policy, at the option of the insured. Should the profits not fully pay the loan, the amount remaining unpaid at that time may be continued as a loan, interest as aforesaid and the dividends accruing on the policy, to be thereafter payable annually. In event of my death or failure to make any payment when due to said company before said loan is fully paid, the amount remaining unpaid shall become due and be deducted from the amount payable under said policy.

Dated at Hutchinson, Kans. 1-15, 1934 (Effective date of Transfer). Witness, O. B. Z. Cadding. Wayne S. Brown, The Insured.

## Exhibit L

### THE ILLINOIS BANKERS LIFE, REPRESENTATIVES IN KANSAS

May 5, 1933.

We have had a number of letters and orders from the insurance department of the state of Kansas, the most recent of which is dated April 29, 1933. These letters are in regard to the moratorium on surrender values and loans, also in regard to additional grace for the payment of premiums in the state of Kansas. The situation in regard to cash and loan values is outlined in the *Firing Line*, for April, on page 3, a reprint of which is enclosed herewith:

"Additional grace period for payment of premiums has been ordered by the Kansas Department as follows: .

"'All life insurance companies shall grant to their policyholders a grace period of thirty days in addition to that provided for in their policies and/or by the statutes of the state.'

"Interest is not to be charged during the additional grace period. Policy holders should be encouraged to pay their premiums within the regular period provided by the policy, to avoid the possibility of lapse, but of course, remittances will be accepted for the additional grace period so long as the order applies. The order may be changed by the department when the present emergency has passed.

"It appears that some life men have been inclined to blame the insurance department for the present situation. The action of the national convention of insurance commissioners was taken to protect policyholders and companies alike during the bank crisis. In these unusual times, it is necessary for all companies, and company representatives in the field, to coöperate with the insurance department. The department has advised us that,

"'Any untrue statements or unwarranted inferences with reference to the orders issued by this department, will be subject to a hearing before the com-

missioner of insurance, and, if it is found at such hearing that untrue statements or unwarranted inferences were made, their (the company and the agents) licenses to operate in the state of Kansas will be revoked or suspended.'

"We feel certain that you will coöperate with the department. We are sending this to you in accordance with the instructions of the insurance department, so that you may be fully advised.

"If there is any further question in regard to the situation, kindly communicate with us.

Very truly yours, H. G. SELLMAN, *Actuary.*

HGS/P

### SECOND EXHIBIT B

To all life insurance companies doing business in the state of Kansas:

Until the further order of the commissioner of insurance with the approval of the governor and under the authority vested in them by—

'AN ACT relating to insurance companies and providing for the control of such companies by the Commissioner of Insurance, subject to the approval of the Governor of the State of Kansas.' Approved March 6, 1933, and published March 7, 1933, in *The Topeka Daily Capital.*

It is hereby ordered that all life insurance companies doing business in the state of Kansas, shall grant to their policyholders a grace period of thirty days in addition to that provided for in their policies and/or by the statutes of this state.

This rule shall apply to all premiums due on and after March 4, 1933, and all policies on which payments are or shall have become due on or after March 4, 1933, shall be considered effective to the same extent as if this order had been made under the authority of said law prior to March 4, 1933.

The commissioner of insurance, with the approval of the governor of the state of Kansas, hereby consents to all such extensions.

(Signed) CHAS. F. HOBBS, *Commissioner of Insurance.*

Approved by (Signed) ALF M. LANDON, *Governor, State of Kansas.*

Topeka, Kansas, March 7th, 1933.