No. 33,284

Ervin J. McMonagle, *Appellee,* v. The Fidelity Mutual Life Insurance Company, *Appellant.*

(67 P. 2d 601)

Opinion filed May 8, 1937.

Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs and R. H. Nelson, all of Wichita, for the appellant.

W. L. Cunningham, D. Arthur Walker, Fred G. Leach and Wm. E. Cunningham, all of Arkansas City, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to recover damages for the alleged wrongful cancellation of a life insurance policy. Judgment was for the plaintiff. Defendant appeals.

Plaintiff was insured in defendant company for $5,000. His premiums were due on January 24 and July 24 each year. The last premium was paid July 24, 1933. Prior to the due date of the January 24, 1934, premium the defendant notified the plaintiff in writing that the premium would be due and that unless payment

was made within thirty-one days from January 24, 1934, as provided by the terms of the policy, the policy would be canceled, except as provided for in the policy for term or paid-up insurance. That notice was in the following form:

"PREMIUM NOTICE

THE FIDELITY MUTUAL LIFE INSURANCE COMPANY

PHILADELPHIA, PA.

(Copy)

| | 1934 | Due | Policy | Semiannual |
|---|---|---|---|---|
| The payment indicated will become due on the date shown subject to the conditions of this notice. | 5  1  S7 | Jan. 24 | Number 381811 | Premium $62.35 |

ERVIN J. McMONAGLE,
1514 N. 5th Street,
Arkansas City, Kans.

Premium due ........ $62.35
Less Divn'd ........ 9.73

Amount Due ........ $52.62

Remittance should be made payable to
THE FIDELITY MUTUAL LIFE
INSURANCE COMPANY
and sent to
THE FIDELITY MUTUAL LIFE INS. Co.
The Parkway At Fairmount Avenue
(Head Office)  Philadelphia, Pa.

TO AVOID ERROR PLEASE RETURN THIS NOTICE WITH REMITTANCE

TAKE NOTICE that unless said premium                    (OVER)

(On reverse side)

so due shall be paid to this company or to a duly appointed agent or person authorized to collect such premium by or before the day it falls due, or within the grace period of thirty-one days thereafter, the said policy and all payments thereon will become forfeited and void, except as to the right to a surrender value, extended insurance or paid-up policy, as in said policy or by statute provided.

"No payment of premium made to any person, excepting exchange for the official receipt with the signatures of the president and treasurer affixed and duly countersigned, will be recognized.

"No agent of the company nor any other person on behalf of the company has any power or authority to make or modify any contract of insurance, to grant credit or extend time for paying any premium or to waive any forfeiture, or to bind the company by making any promise or by making or receiving any representation or information. Such powers can be exercised in writing only by the president, vice-president, actuary, or assistant actuary of the company at its head office, and cannot be delegated.

"The sending of this notice is not a waiver of any forfeiture, and no payment made in pursuance of it shall be valid if said policy be not in force on due date of premium stated herein.

"Do not lapse or forfeit your policy. A lapsed or forfeited policy can be reinstated only upon furnishing evidence of insurability satisfactory to the company.

"Is your address as given on reverse side correct.................................. (Answer 'Yes' or 'No.') If you fail to answer this question, we will assume that the address as it appears on the books of the company is correct. If you answer 'No,' then give correct address on lines below.

............................................................................................................................................................

(To be signed by the insured).............................................................................."

On receipt of this notice plaintiff sent the following letter to defendant:

"ARKANSAS CITY, KAN., February 27th, 1934.
"The Fidelity Mutual Life Insurance Co.,.
    P. O. Drawer 1383, Philadelphia, Penn.
"GENTLEMEN: I have your premium notice due on my policy No. 381811 in amount of $62.35. The automobile business has been practically at a standstill for three months, but we are just getting started again. Will it be possible for me to get a loan on my policy to cover this premium, or could I give you my note for it due in three, four or five months, as it will be more convenient for me to pay at that time? Thank you for your consideration of this matter, and I will appreciate anything you can do for me in this matter. Please let me hear from you as soon as possible.
                                Yours very truly,      E. J. McMONAGLE.
1514 No. 5th St., Arkansas City, Kan."

In response to that letter defendant sent the following letter to plaintiff:

"THE FIDELITY MUTUAL LIFE INSURANCE COMPANY
                    PHILADELPHIA, PA.
"Policy Number 381811                              MARCH 9, 1934.
"Mr. Ervin J. McMonagle, 1514 N. Fifth Street, Arkansas City, Kan.
    "DEAR SIR: We acknowledge your remittance and request for an extension of time for the payment of the remainder of net semiannual premium due January

| | |
|---|---|
| 24th ............................................. | $52.62 |
| You remitted....................................... | ..... |
| Balance .......................................... | 52.62 |
| Interest at six percent on balance................... | 1.04 |
| Total due June 24th........................... | $53.66 |

"A premium note is enclosed. Please sign and return it on or before March 19th. If you do not your policy will lapse and thereafter we cannot accept settlement until it has been reinstated in accordance with its terms.
                            Yours truly,
1 incl.                      T. W. VAN HOESEN, Assistant Treasurer."

Accompanying this letter was the following document:

"Amount due ........ $52.62
Interest ............. 1.04
Total due ........... 53.66

ARKANSAS CITY, KAN., 3/9, 1934.

"On the 24th day of June, 1934, I promise to pay to the order of The Fidelity Mutual Life Insurance Company fifty three & 66/100 dollars, at head office of the company, Philadelphia, Pa., without defalcation for value received. This note is given in consideration of extension of time for payment of the s/a premium due the 24th day of Jan., 1934, on policy number 381811 issued by The Fidelity Mutual Life Insurance Company. If this note be not paid within ten days after due date hereof, said policy shall be automatically null and void, except as to paid-up or extended insurance, if any, provided by said policy, without notice to the maker hereof and without any act on the part of the company, and shall remain so until restored, as provided by its terms.

MB Note No. 72870     . Due 6/24/34      ERVIN J. McMONAGLE."
3/19 Office No...............................

This document was executed and forwarded to the defendant by plaintiff. In return defendant sent to plaintiff, executed by its proper officers, the following receipt:

"Received, in consideration for extension of time for the payment of premium due on the 24th day of Jan., 1934, on Policy No. 381811 on the life of E. J. McMonagle, cash payment of $——— and note or notes for $53.66, payable to the order of The Fidelity Mutual Life Insurance Company.

"Cash payments will be applied toward the settlement of said premium only in event said note or notes (or renewals thereof) be paid within the time therein prescribed.      WALTER LEMAR, *President,*

CHAS. J. R. SPROULE, *Treasurer.*

"Countersigned at Philadelphia, Pa., on the 24th day of Feb., 1934.·

M. MOORHEAD, *Collector."*

It will be noted that the document executed and returned to the defendant by plaintiff on March 19, 1934, was a promissory note as to the first part, while the second part recited the consideration for which it was given and provided that if the note was not paid within ten days after the due date the policy would be automatically null and void except as to paid-up or extended insurance, if any, provided by the policy. It was given for the amount of the semiannual premium plus interest and less the semiannual dividend upon the policy and came due on June 24, 1934, a month before the next premium-paying date.

Prior to the due date of the agreement plaintiff received written notice of the due date thereof and was advised that his policy would be canceled, except as to paid-up or extended insurance, as provided

for in the policy, unless the note was paid within ten days from its due date. This notice was received ten days or two weeks prior to June 24, 1934, the due date of the agreement. The note was not paid on the due date or within ten days thereafter. On July 12, 1934, defendant advised plaintiff that the policy had been canceled by reason of the nonpayment of the extension note. A reinstatement application was sent to the plaintiff, who sent it together with his check to pay the extension note to the company, and it was received by the company about July 26, 1934. This check in payment of the premium extension note was sent to the defendant eighteen days after the extension note was due. On August 8, 1934, defendant advised the plaintiff that his reinstatement application had been rejected as he was not then an insurable risk. At this time defendant returned to the plaintiff his check which was tendered for the payment of the extension note.

At the time the policy was canceled it had been in force eight years and eleven months. The reserve on it at that time was $410. There was also to the credit of the policy $9.73 apportioned to it in connection with the premium due January 24, 1934. This made a total to the credit of the policy of $419.73. There was a loan against the policy of $300. Interest on that loan from July 24, 1933, to June 24, 1934, at 6 percent per annum was $16.50, and there was earned premium from January 24, 1934, to June 24, 1934, of $52.98. It must be remembered that this item referred to as earned premium by the defendant is the item for which the premium extension note was given. This made a total indebtedness of $369.48 against total credits to the policy of $419.73, which left a balance of $50.25. On August 27 the defendant advised plaintiff that the balance of value remaining in the policy as of June 24, 1934, after deducting the loan and interest and earned premium was $50.25. He was advised that this amount had been used in accordance with the terms of the policy to purchase automatic extended term insurance of $46.31 until twelve o'clock noon September 20, 1935, at which time the policy would terminate without further value.

He was further advised, however, that if it was his desire to secure the net cash value of $50.25 he might sign an enclosed surrender form, together with the beneficiary, and return it to the defendant immediately. Plaintiff did not comply with this letter. Hence the cash value of $50.25 was applied to purchase extended term insurance, as provided in section 3 of the policy. The amount of ex-

tended term insurance that was allowed under section 3 was $4,631 and continued from June 24, 1934, to September 20, 1935. This meant that had plaintiff died during the period from June 24, 1934, to September 20, 1935, his beneficiary would have been paid $4,631.

After some correspondence this action was instituted on the theory that the policy had been wrongfully canceled. Evidence showing facts about as they have been detailed here was introduced at the trial. The trial court instructed the jury as a matter of law that the policy had been wrongfully canceled and submitted the case to the jury only on the amount of damages. At the close of the evidence for plaintiff defendant demurred to it. This demurrer was overruled. At the close of all the evidence defendant moved for a directed verdict. This motion was overruled. The jury returned a verdict in favor of plaintiff and judgment was rendered accordingly. Defendant appeals.

It is the theory of plaintiff that there was no liability on the part of plaintiff to pay the semiannual premium necessary to carry the policy in force from January 24, 1934, to June 24, 1934, except the liability created by the promissory note, that the note was a binding obligation against plaintiff and was enforced and collected as such, that the company having enforced and collected the note and the full semiannual premium to carry the policy in force to July 14, 1934, cannot be heard to say that the policy was not in full force during the period for which the premiums were collected—hence the policy was wrongfully canceled on June 24, 1934.

The question may be more easily grasped if we consider each step and its consequences. In the first place, had nothing been done by plaintiff at the time he received the notice sent out by the company of the due date of the policy, it would have lapsed thirty-one days after January 24, 1934. In that case plaintiff would have received either the cash value, as provided in section 3 of the policy, or extended term insurance or participating paid-up insurance, all provided for by the same section. Had he seen fit to do this he would have received about $50.25 plus $52.98 or $103.00 cash or as much extended term or participating paid-up insurance as that much cash would buy.

Plaintiff did not see fit to do this, however. Instead he wrote to the defendant the letter already quoted of February 27, 1934. It will be noted that he asked in this letter if he could not get a policy loan to cover the premium. The company sent him in response to

this letter the agreement referred to as a premium extension note. This agreement was signed by plaintiff and returned to the defendant. There can be no doubt that it was used by the defendant pursuant to the provisions of G. S. 1935, 40-416.

That section provides as follows:

"A life insurance company may enter into subsequent agreements in writing with the insured, which need not be attached to the policy, to extend the time for the payment of any premium, or part thereof, upon condition that failure to comply with the terms of such agreement shall lapse the policy as provided in said agreement. Subject to such lien as may be created to secure any indebtedness contracted by the insured in consideration of such extension, said agreement shall not impair any right existing under the policy."

This statute was considered by this court in *Brown v. Illinois Bankers Life Assur. Co.*, 144 Kan. 670, 63 P. 2d 165. That was a case where the question was whether a notice of thirty-one days was required to be given the insured after he had executed a premium extension agreement pursuant to the above statute and had failed to pay the amount named in the agreement when it came due. This court held that no additional notice was required. In other words, the holding was that when the premium extension agreement became due and was not paid the company could do just what the agreement provided for, that is, cancel the policy without further notice. To the same effect is *Hildyard v. Mutual Life Ins. Co.*, 145 Kan. 197, 64 P. 2d 7. It is true that this is not precisely the kind of an agreement plaintiff asked defendant for in his letter, but he signed it and returned it to defendant, and there is nothing in this record from which it may be inferred that plaintiff had not read this agreement and did not know what was contained in it. Since this is true it follows that the agreement meant just what it said, that is, that if the note was not paid in ten days after it became due the policy would automatically be null and void. Following the above cases there can be no doubt that laying aside all other considerations for the moment the policy in this case became null and void when the note was not paid within ten days after it became due. What was the effect, then, of the disposition that was made of the reserve value of the policy? Here we should first examine the terms of the policy with reference to this. The matter is provided for by section 3 of that policy. That section reads as follows:

"SECTION 3. *Non-forfeiture provisions.* After three full years' premiums shall have been paid and after default in payment of any subsequent premium, the following provisions shall become operative:

"(a) *Extended Term Insurance.*—The insurance shall be automatically continued, without the right to dividends or loans, from the due date named herein for the payment of the premium in default, for the face amount of this policy, plus any outstanding paid-up additions, and less the amount of any indebtedness in the company hereon, and for such a term as the cash value of this policy will purchase at the net single premium rate at the attained age of the insured, according to the American Experience Table of Mortality and interest at three and one half percent; or

"(b) *Participating Paid-up Insurance.*—Upon surrender and discharge of this policy by all parties in interest not later than sixty days after default in payment of premium, the company will grant participating paid-up insurance payable at the same time and under the same conditions as this policy and with the right to loans and cash values. The amount of paid-up insurance shall be such as the cash value of this policy will purchase at the net single premium rate at the attained age of the insured, according to the American Experience Table of Mortality and interest at three and one half percent; or

"(c) *Cash Value.*—Upon surrender and discharge of this policy by all parties in interest not later than sixty days after default in payment of premium, the company will pay the cash value. The cash value shall be a sum equal to the reserve on this policy on the due date named herein for the payment of the premium in default (omitting fractions of a dollar per thousand of insurance) plus the reserve on any outstanding paid-up additions and any dividend standing to the credit of this policy, less a surrender charge from the third to the ninth policy years, inclusive, not exceeding one percent of the sum insured and less the amount of any indebtedness to the company hereon. The reserve shall be computed on the basis of the American Experience Table of Mortality and interest at three and one half percent. The payment of the cash value may be deferred for not exceeding ninety days after receipt of application therefor."

It will be noted that these provisions did not become operative until three years' premium had been paid and there had been default in the payment of a subsequent premium. Paragraph 3(a) provides that on a default in the payment of any premium the insurance shall be automatically extended for such a term as the cash value of the policy would buy. This is the provision that came into effect where an insured defaulted in the payment of his premium and did nothing whatever about it. That is the section under which the defendant operated in this case. Section 3(b) provided for participating paid-up insurance. It was necessary for the insured to surrender and agree to a discharge of the policy within a certain time limit after the default in order to take advantage of this provision. Then 3(c) provided for the payment of the cash value of the policy "upon surrender and discharge of the policy within sixty days after default." It is this option that defendant offered to the plaintiff in its letter of August 27, 1934.

There is a reason why we know that the premium extension agreement in this case referred to the above provision. It provided that upon failure to pay the note "said policy shall be automatically null and void except as to paid-up or extended insurance, if any provided by said policy." The above quoted paragraph of the policy is the only provision in it for "paid-up or extended insurance"—hence it must have been the paragraph to which the agreement referred.

Was there a default in the payment of premium here? Clearly there was. It was not paid on the due date, but an agreement was made extending the due date and providing that upon failure to pay on that date the policy would become void.

It must be remembered that this is an action for damages for the alleged wrongful cancellation of a policy. The question as to what was done with the cash value of the policy, that is, whether the defendant gave plaintiff as much extended insurance as he was entitled to, is not in this case. The question is whether it had a right to cancel the policy when it did. On this we have reached the conclusion that the provision as to what disposition should be made of the cash value of the policy did not become operative until after there had been a default in payment of a premium under the extension agreement which occurred in this case. Hence, the use made of that part of the cash value which was used to pay the premium from January 24, 1934, to June 24, 1934, was not a payment of premium extension agreement but a payment of an earned premium and did not prevent the policy from becoming null and void under the plain terms of the agreement. It follows that the motion of defendant for judgment should have been sustained.

The judgment of the trial court is reversed with directions to render judgment for defendant.