No. 38,921

THE CONSUMERS CO-OPERATIVE ASSOCIATION, a Kansas Corporation, *Appellant,* v. THE STATE COMMISSION OF REVENUE AND TAXATION OF THE STATE OF KANSAS, *Appellee.*

(256 P. 2d 850)

Opinion filed May 9, 1953.

*F. R. Olmsted,* of Kansas City, Mo., argued the cause, and *Philip A. Dergance,* of Lawrence, and *Clement H. Hall,* of Coffeyville, were with him on the briefs for the appellant.

*Wilbur G. Leonard,* of Council Grove, argued the cause, and *Ervin G. Johnston,* of Peru, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This is an appeal from that part of a judgment of the district court of Montgomery county which sustained in part a final order of the State Commission of Revenue and Taxation entered in an appeal from an assessment of compensating (use) tax made against the appellant.

The appellant is a co-operative association, organized under the Co-operative Marketing Act of the State of Kansas, and is engaged in extensive manufacturing and merchandising operations. Included in its ventures is the ownership and operation of an oil refinery at Coffeyville, Kansas.

The appellant is registered with the Director of Revenue of the State Commission of Revenue and Taxation as a retailer, pursuant to the provisions of the Kansas Retailers' Sales Tax Act, and the Kansas Compensating Tax Act.

The Consumers Co-operative Association, sometimes known as C. C. A., will be hereinafter referred to as appellant. The State Commission of Revenue and Taxation of the State of Kansas will be hereinafter referred to by its name, or as appellee.

The Director of Revenue conducted an audit of the appellant's books covering the period from January 1, 1945, through August 31, 1948, and thereafter, pursuant to said audit, assessed compensating tax and interest against the appellant in an amount in excess of $14,000.

Upon appeal to the State Commission of Revenue and Taxation, the assessment of the Director of Revenue was sustained, and the appellant sought redress through the district court of Montgomery county. Prior to proceeding to trial, the respective parties, with the approval of the court, settled some of the issues involved, and the case proceeded to trial on the sole remaining issue. The facts are not in dispute and are stipulated by the parties, the material parts of which are as follows:

"8.  . . .

"(d) The question remaining in controversy and about which the dispute has not been resolved concerns the tax in the amount of $6,181.29, plus interest, assessed by the Director as a part of (the) Assessment . . . on the purchase by CCA of other oil drums for the purchase price of $309,064.85. There is no controversy or dispute between the parties as to the amount of the purchase price or the calculation of the tax, but the controversy and dispute still remaining in this appeal is limited to the question of whether or not said tax was, or is, assessable against CCA on the purchase of said drums, or any of said drums under the 'Kansas compensating tax.'

"9. The oil drums involved in that part of (the) Assessment . . . which is still in controversy, that is to say, drums of the basic value of $309,-064.85, were purchased by CCA from drum suppliers outside the State of Kansas, and shipped by or to CCA to its place of business in Coffeyville, Kansas, where they were filled with oil and thereafter distributed with the oil which they contained to domestic purchasers of oil, mainly local retail agricultural cooperative associations located variously and principally in the states of Kansas,

Oklahoma, Colorado, Missouri, Iowa, North Dakota, South Dakota, Nebraska, and Wyoming. At the time CCA made such sales, it was advised by such local cooperative associations that the local associations intended to resell the oil to their members and patrons who, in the main, were and are farmers, and that such sales by the local associations would be, in the main, in drum lots. As far as CCA was and is advised, such local associations did resell the greater part of the oil in drum lots, selling the oil in the same drums in which it had been received from CCA, charging their patrons separately for the oil and drums, but refunding to patrons the charges made for the drums if and when drums were returned to the local associations. . . . When CCA originally purchased the drums, when drums were delivered to local associations, and when drums were redelivered to CCA by local associations, CCA paid no sales, compensating or use tax, either to the State of Kansas or to any other state, on the transactions, nor did it collect any such tax. Whenever CCA furnished a drum in connection with a sale of oil to a local cooperative association, and all drums in this controversy were so furnished, it invoiced the local association for the oil itself at CCA's regular price, and on the same invoice, but as a separate item, invoiced the local association for the drum at a price approximately equal to the price which CCA had paid for the drum.

"10. During the period of time commencing before January 1, 1945, and continuing until September 1, 1947, CCA . . . required such local associations, whenever possible to furnish their own drums. In those instances where the local associations were unable to furnish their own drums, CCA sold them drums invoicing them in the manner stated in paragraph nine. During that period of time, CCA neither purchased nor repurchased drums of any kind from such retailers, but accepted drums from them only for the purpose of refilling them with oil as they reordered oil. If, during that period of time, a drum tendered for refilling by any such retailer was not in good condition for refilling, the same was rejected by CCA, and returned to the retailer. If drums were sent to CCA by any such retailer ahead of orders from that retailer for oil, a drum credit termed a 'deposit' was given the retailer. The said drums were co-mingled with other drums held by CCA and, when a further order of said retailer was filled, the number of drums withdrawn were charged against his drum deposit account. Many of the drums tendered to CCA by such retailers during that period for refilling had been acquired by such retailers from sources other than CCA; many of the drums had been sold to such retailers by CCA in the manner hereinbefore outlined. . . .

"11. Commencing on September 1, 1947, CCA abandoned its policy of refilling its customers' drums and, from that time on through all time pertinent to the issues in this case, continued to furnish drums to oil purchasers exactly in the manner set forth in paragraph nine, but agreed with such purchasers at the time when oil was purchased and drums furnished that, at the option of the purchaser, the drums when emptied could be redelivered to CAA and, upon inspection and acceptance of the drums by CCA, such purchasers would be reimbursed for them by CCA at the prices originally charged by CCA for their drums. Under this arrangement, purchasers of oil were not required to return drums, but if they did so and if the drums were in good condition, they were paid for them. . . ."

On the submitted pleadings and stipulated facts, the trial court found:

". . . that against appellant's contention to the effect that said drums were 'sold' by appellant, and, hence, were purchased in the first instance for resale and not for appellant's use, the court finds appellant was not engaged in the business of selling drums and that appellant 'used' in its oil business in Kansas the drums so purchased and that pursuant to G. S. 1949, 79-3602 (*k*) and 79-3703, the purchase of such drums was subject to the Kansas compensating tax, and therefore, said order of the appellee of June 14, 1951, with respect to said tax . . . should be sustained,"

and entered judgment accordingly. It is from this judgment appellant appeals, contending that the oil drums involved in this controversy were purchased by appellant not for its own use but for the sole purpose of resale at wholesale, and that the drums were sold at wholesale to its various local co-operative associations and other retail dealers. Appellee contends that under the Compensating (use) Tax Act, appellant is the "user" of the drums. This brings us to a discussion of both the Kansas Retailers' Sales Tax Act and the Kansas Compensating Tax Act.

The sales tax act was passed in 1937. It was chapter 374 of the Session Laws of that year. It is now, with some amendments, G. S. 1949, 79-3601 to 79-3625. It levied a tax of two percent upon the privilege of selling tangible personal property at retail in this state, or rendering or furnishing certain services therein. The act is framed and has been uniformly construed both by the tax commission and the courts so the transaction taxed is that by which a commodity moves to the ultimate consumer, whoever he may be.

With the enactment of the sales tax act another problem arose. Much property is bought outside the state and brought in for various purposes. Kansas could not tax the privilege of selling property where the sale took place beyond its borders. It could, however, tax the privilege of using property within this state. The result was the enactment of chapter 375 of the Session Laws of 1937, now with some amendments, G. S. 1949, 79-3701 to 79-3711. It is denominated "Kansas Compensating Tax." It is sometimes referred to as the "use tax." These two acts are really complementary and supplemental to each other and are construed together generally. It would not do to make a taxpayer pay two percent tax when he bought property and also two percent when he used it. On that account the section following the section which imposed the tax provided certain transactions to which the tax should not apply. Among these is one in respect to the use of property, the sale of

which had already been subject to a sales or use tax, in respect to the use of any property brought into or used within the state, if such property would not have been subject to tax under the provisions of the retailers' sales tax act of this state, if purchased within this state. (*Southwestern Bell Tel. Co. v. State Commission of Revenue and Taxation,* 168 Kan. 227, 212 P. 2d 363.)

Appellant's contention takes us to an examination of the Sales Tax Act, article 36, chapter 79. Section 79-3602(e) defines a retail sale as a sale made within the state of tangible personal property for use or consumption and not for resale, except wholesale sales. It would appear the above definition simply states that a retail sale is any sale except a wholesale sale. The original Sales Tax Act provided for the treatment of certain sales as wholesale sales and thus exempt under the Sales and Compensating Tax Acts. Included in the original Sales Tax Act is the following provision:

"Each sale of tangible personal property or service made to a person engaged in the business of producing, manufacturing or compounding for sale, any article, substance, service or commodity which is actually used in the production, and enters into the processing of, and becomes an ingredient or component part of the article, substance, service, or commodity which he manufactures or compounds, produces or furnishes, including the container, label, or the shipping case thereof, shall be deemed a wholesale sale and shall be exempt from taxation under this act; . . ." [G. S. 1939 Supp. 79-3602(l).]

Under this section, containers used by those engaged in the business of producing, manufacturing, or compounding for sale would be wholesale sales and therefore exempt.

Our legislature, in 1941, saw fit to amend this section and, as amended, now appears as G. S. 1949, 79-3602(k), by adding the intalicized words:

"Each sale of tangible personal property or service made to a person engaged in the business of producing, manufacturing or compounding for sale, any article, substance, service or commodity which is actually used in the production, and enters into the processing of, and becomes an ingredient or component part of the article, substance, service, or commodity which he manufactures or compounds, produces or furnishes, including the container, label, or shipping case, *which container, label, or shipping case is used in the distribution of said article, substance or commodity and is not to be returned to the producer, manufacturer or compounder for reuse,* shall be deemed a wholesale sale and shall be exempt from taxation under this act; . . ."

The import to be given the amendment to the law seems reasonably clear. Unless the containers, labels or shipping cases or, in the instant case, the drums, were not to be returned to the producer, manu-

facturer or compounder or, in the instant case, appellant refinery, for reuse, such containers cannot enjoy the exemption provided. The exemption is limited to only such containers which meet the qualifications "not to be returned."

It will be presumed that the legislature in amending the aforementioned statute intended to make such change in the prior existing law and we will, therefore, give effect to the amendment. A change in the phraseology or adding phrases to an original act raises a presumption that a change of meaning was also intended.

Summarized, it may be said that under the original act, all containers used in wholesale sales were exempt. Under the act, as amended, containers which *are not to be returned* are exempt. If a container is to be returned, it is expressly excluded from the exemption provided by the act, as amended, and is not a wholesale sale within the terms of that act. Any other construction would simply mean the legislature accomplished nothing by its revision. It must be assumed it was intended to supply some want, to fill some deficiency, to add something to make existing legislation more complete. (*State, ex rel., v. Richardson,* 174 Kan. 382, 256 P. 2d 135; *Brown v. Illinois Bankers Life Assur. Co.,* 144 Kan. 670, 674, 63 P. 2d 165; *City of Emporia v. Norton,* 16 Kan. 236.)

In view of the stipulated facts, it is apparent that appellant cannot bring itself within the exemption provisions of section 79-3602($k$) of the Sales Tax Act inasmuch as the drums were to be returned at the option of the local co-operative associations for reuse. The appellant does not contend that it is engaged in the business of selling "new" or "unused" drums which are empty. It admits that the "sale" of the drums was incidental to the sale of the oil. It stipulated that when it furnished a drum in connection with a sale of oil, it invoiced the drum itself as a separate item at a price approximately equal to the price it had paid for the drum.

In the instant case, the tax was assessed under the Kansas Compensating Tax Act, G. S. 1949, article 37, chapter 79. The pertinent part of section 79-3703 provides:

"There is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using, storing, or consuming within this state any article of tangible personal property purchased subsequent to June 30, 1945. Such tax shall be levied and collected in an amount equal to the purchase price paid by the taxpayer multiplied by the rate of two per cent. . . ."

Section 79-3702(c) defines the word "use" as follows:

"The word 'use' means and includes the exercise within this state by any person of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include processing, or the sale of the property in the regular course of business, and except storage as hereinafter defined."

Section 79-3703(a) provides as follows:

"For the purpose of the proper administration of this act and to prevent evasion of the tax, evidence that tangible personal property was sold by any person for delivery in this state shall be prima facie evidence that such tangible personal property was sold for use in this state."

The record presents no evidence that appellant was engaged in the business of selling "unused" drums as such. These drums, as shown, were used by appellant as containers for the oil products it refined, and were purchased by appellant from drum suppliers outside of the state of Kansas and were shipped to its place of business in Coffeyville where they were filled with oil, and thereafter distributed with the oil which they contained to domestic purchasers of oil, and under section 79-3703 (a) are presumed to be tangible personal property for use in this state. At the time appellant made sales to its customers it was advised by them that they intended to resell the oil in drum lots. Appellant invoiced the drums separately from the oil at a price approximately equal to that which it had paid for the drums. It was making no profit on the drums. It did not intend to sell them at wholesale as an ordinary commodity. Its purpose in purchasing the drums was to provide containers for its refined products.

In view of the fact that the drums were billed as separate items, were charged to the retailer at approximately their cost, and the agreement of the appellant to accept their return, are persuasive factors in the plan of the appellant, and constitute a use of such drums as contemplated by the Kansas Compensating Tax Act, G. S. 1949, 79-3701 *et seq.* Appellant invites our attention to several cases from foreign jurisdictions as tending to show that its transactions in the instant case are tax exempt. An examination of these authorities reveals that the tax laws of the states involved in those cases differ materially from our statutes.

It follows that the judgment of the trial court should be affirmed. It is so ordered.