[Civ. No. 28532.   Second Dist., Div. Three.   June 24, 1966.]

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Plaintiff and Appellant, v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant and Respondent.

Parker, Stanbury, McGee, Peckham & Garrett and J. H. Peckham for Plaintiff and Appellant.

Spray, Gould & Bowers and Daniel O. Howard for Defendant and Respondent.

FRAMPTON, J. pro tem.*—This litigation was submitted to the trial court, sitting without a jury, upon the following facts offered by way of stipulation, the depositions of Irvin M. Ryder (hereinafter Ryder), Stanley Charles Plamowski (hereinafter Stanley), Richard Bennett Plamowski (hereinafter Richard), and certain exhibits including the public liability insurance policies issued respectively by the plaintiff and defendant herein.

Richard was 20 years of age on October 6, 1961, the day of the accident out of which this litigation arose. Stanley is the father of Richard. Richard possessed a valid California driver's license, obtained by his father and mother having signed and verified his application therefor. (Veh. Code, § 17700, et seq.) Richard's family resided in Lancaster, California, and Richard was a student at Antelope Valley College.

Ryder is the president of Ryder's Incorporated, a California corporation.

A little over a week before the happening of the accident Richard was employed by Mrs. Dawson, the manager of a store owned and operated by Ryder's Inc., situated in the City of Lancaster, California. Richard was employed to work as a clerk in the Lancaster store and he was to work daily from 3 p.m. to 5 p.m. His duties were to stuff boxes, clean up the store, clean the windows and to make trips between the Lancaster store and a store situated in Van Nuys, California, also owned and operated by Ryder's Inc. The purpose of the trips between the Lancaster store and the Van Nuys store was to pick up and deliver merchandise between the two stores to keep the stock of merchandise in proper balance.

At the time Richard was employed he was told by Mrs. Dawson that he would be expected to supply an automobile of

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

some kind because he would have to make trips down to Van Nuys to exchange merchandise between the two stores, and that such trips would average about one a week. Mrs. Dawson just asked him if he had a car.

It was agreed that Richard would be paid at the rate of $1.50 per hour for his services and would be given the sum of $5 in addition thereto for each trip he was required to make between the Lancaster and Van Nuys stores. The sum of $5 was given to him before the start of each trip so that he could buy the necessary gasoline.

On October 6, 1961, Richard asked for and received permission from his father, Stanley, to drive the 1957 Mercury station wagon owned by his father and mother. At this time Richard did not know whether he would be required to make a transfer of merchandise between the stores. Upon his arrival at the Lancaster store he was told to take some merchandise to the Van Nuys store, which he did, using the Mercury station wagon as a means of transportation of himself and the merchandise. Upon arrival at the Van Nuys store, Ryder helped him unload the merchandise, then reload the station wagon with merchandise from the Van Nuys store to be delivered to the Lancaster store.

On the return trip to Lancaster, Richard became involved in an accident with another vehicle which was coming in the opposite direction from that in which he was going. This accident resulted in the death of one of the occupants of the other car and in personal injuries to four other occupants of such car.

St. Paul Fire and Marine Insurance Company (hereinafter St. Paul) had issued its policy of liability insurance to Ryder and Ryder's Incorporated with limits of $100,000 for injury to one person and $100,000 for any one accident, and Government Employees Insurance Company (hereinafter Government) had issued to Stanley its policy of liability insurance with limits of $10,000 for injury to one person and $20,000 for injuries to more than one person as the result of one accident. Each policy was in full force and effect at the time of the accident in which Richard was involved, and each policy provided that the insurer would defend any action brought against persons insured under the respective policies to establish liability within the terms of the policies.

An action was brought for the wrongful death of one of the occupants of the other car involved in the accident and also

for personal injuries to the other four occupants against Richard, Ryder, Ryder's Incorporated and Stanley wherein it was alleged that the accident and its consequences were proximately caused by negligence on the part of Richard and his employers and principals, Ryder and Ryder's Incorporated, that Stanley was the father of Richard and was signatory to the driver's license application for his son Richard and that Stanley was the owner of the motor vehicle which was being operated by Richard at the time of the accident with the knowledge and consent of Stanley.

After summons and complaint had been served in the above action, Government and St. Paul demanded of each other that the other party assume the defense of the action and the tenders were mutually refused.

The above action went to trial with Government furnishing a defense for Stanley and Richard and St. Paul furnishing a defense for Ryder and Ryder's Incorporated under its policy in which it agreed to pay on behalf of the insured all sums which the insured should become obligated to pay by reason of the liability imposed by law for damages because of bodily injury, including death resulting therefrom, sustained by any person. Under the facts here shown, Ryder's Incorporated was responsible for the conduct of Richard under the doctrine of *respondeat superior*. Prior to the conclusion of the trial Government and St. Paul, through their respective counsel, agreed to and did settle the litigation for the total sum of $104,000, of which Government paid $20,000 and St. Paul paid $84,000. As part of the settlement agreement each insurer reserved the right to determine their respective shares toward the settlement and the costs of defense of the action and such rights were saved to each without prejudice to either party.

The present action was filed by Government to have it determined that the Government policy did not provide the primary coverage on the Plamowski vehicle, that the St. Paul policy provided for primary and pro rata coverage to Richard and Stanley as well as to Ryder and Ryder's Incorporated.

The trial court found that Richard and Stanley were not insured under the St. Paul policy and that Ryder and Ryder's Incorporated were additional insureds under the Government policy. The court further found that the cost of defense incurred by Government was the sum of $1,947.77 and that the cost of defense incurred by St. Paul was the sum of $1,602.96, and that St. Paul was entitled to a proration of its costs of

defense. On proration the court assessed one-sixth of St. Paul's costs against Government and entered judgment in favor of St. Paul and against Government in the sum of $267.16 together with costs of suit. The appeal is from this judgment.

Government agrees that its policy issued to Stanley extended coverage to Richard for damages resulting from the accident. St. Paul's policy contained the following provisions:

"DEFINITIONS

"(a) INSURED

"The unqualified word 'Insured' includes the Named Insured and also includes . . . (2) under Coverages A and B, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Insured or with his permission, and any executive officer of the Named Insured with respect to the use of a non-owned automobile in the business of the Named Insured. . . .

"(b) AUTOMOBILE

"Except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer as follows:

"(2) Hired Automobile—an automobile used under contract in behalf of, or loaned to, the Named Insured provided such automobile is not owned by or registered in the name of (a) the Named Insured or (b) an executive officer thereof or (c) an employee or agent of the Named Insured who is granted an operating allowance of any sort for the use of such automobile; . . ."

Under language similar to that contained in the St. Paul policy it has been held that under circumstances where a vehicle which was owned by the parent and was used by the son, with the knowledge and consent of the parent, to aid the son in carrying out the terms of his employment with a third person, such circumstances, standing alone, did not place the vehicle in the category of an automobile used under contract in behalf of or loaned to such third person. (*Faribault Canning Co.* v. *Northwestern Nat. Cas. Co.* (7th Cir.) 298 F.2d 58, 61.) Similarly, where an executive officer of an insured corporation rented a vehicle in his own name and not as an officer of the corporation, and where the vehicle was used in the course and scope of the officer's employment and during such use the

officer became involved in an accident with another vehicle which resulted in personal injuries to the occupants of the other vehicle and property damage to such vehicle, it was held under the language of the insurance policy which covered the liability of the corporation and which policy contained language substantially identical with the language of the St. Paul policy here under consideration, that the vehicle rented by the officer was not used under contract in behalf of the corporation (Named Insured) or loaned to it. (*Continental Cas. Co.* v. *Hartford Acc. & Indem. Co.*, 213 Cal.App.2d 78, 88-90 [28 Cal.Rptr. 606] ; Cf. *Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27, 32 [17 Cal.Rptr. 12, 366 P.2d 455].)

██ In the case at bench, Richard was not an agent[1] of Ryder or Ryder's Incorporated, but was an employee of the latter. Under Richard's contract of employment there is nothing to indicate that he had the authority to hire or to borrow, on behalf of Ryder or Ryder's Incorporated, a motor vehicle for his own use in connection with his employment. There is nothing in the record to show that Stanley, the owner of the vehicle, had any agreement or understanding with Ryder or Ryder's Incorporated concerning the use of the vehicle by Richard in connection with the latter's employment. Insofar as the record before us shows, the only contract relating to the use of the vehicle was that of a bailment between Stanley as bailor and Richard as bailee. (*Baugh* v. *Rogers*, 24 Cal.2d 200, 214 [148 P.2d 633, 152 A.L.R. 1043].) It follows from the foregoing that the Plamowski vehicle was not, at the time of the accident here under consideration, an automobile used under contract in behalf of or loaned to Ryder or Ryder's Incorporated, the named insured under the St. Paul policy, and such policy, therefore, did not afford coverage to the Plamowskis against liability for the damages sustained by the heirs of the deceased occupant of the other car or by the other four occupants thereof.

Ryder and Ryder's Incorporated were additional insureds under the policy of insurance issued by Government and Government owed a duty to defend them as well as Stanley and Richard Plamowski. ██ Government refused to defend Ryder or Ryder's Incorporated and St. Paul assumed this obligation. Under these circumstances St. Paul is entitled to

---

[1] "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." (Civ. Code, § 2295.)

recover from Government that portion of its costs of defense in the proportion that Government's total coverage bears to the total coverage of both Government and St. Paul, that is to say in the proportion that $20,000 bears to $120,000 or one-sixth of such costs. (*Continental Cas. Co.* v. *Zurich Ins. Co.,* *supra,* 57 Cal.2d 27, 36-38.)

Government urges that the pleadings admit that the vehicle operated by Richard at the time of the accident was within the coverage of the policy of liability insurance issued by St. Paul and that therefore the only issue that was left for the determination of the trial court was the nature and extent of proration between the policies.

Upon examination of the superior court file (Cal. Rules of Court, rule 12) it appears that a portion of paragraph V of Government's complaint alleges in substance that the vehicle being operated by Richard at the time of the accident was within the coverage of the policy of liability insurance issued by St. Paul and that this allegation stands undenied by the answer of St. Paul. However, upon examination of the entire record before the trial court, including the trial briefs submitted on behalf of both Government and St. Paul, it is clear that the question of coverage by St. Paul of the Plamowski vehicle was a matter in dispute at all times as between both insurers and that this question was submitted by both insurance carriers to the trial court for decision, and that Government consciously participated in its submission. Under these circumstances Government may not now be heard to say that the issue of coverage was not properly before the trial court. (*Miller* v. *Peters,* 37 Cal.2d 89, 93 [230 P.2d 803]; *People* ex rel. *Dept. of Public Works* v. *Lagiss,* 223 Cal.App.2d 23, 37 [35 Cal.Rptr. 554]; *Estate of Pieper,* 224 Cal.App.2d 670, 680 [37 Cal.Rptr. 46].)

Judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.