513 F.2d 915
 TRINITY UNIVERSAL INSURANCE COMPANY, Plaintiff-Appellee,
v.
CINCINNATI INSURANCE COMPANY, Defendant-appellant,
and
Joe L. Chittum, Individually and as Executor of the Estate
of Mary RuthChittum, Deceased, Defendant-Appellee.
TRINITY UNIVERSAL INSURANCE COMPANY, Plaintiff-Appellee,
v.
CINCINNATI INSURANCE COMPANY, Defendant-Appellee,
Joe L. Chittum, Individually, and as Executor of the Estate
of Mary RuthChittum, Deceased, Defendant-Appellant.
 Nos. 74-1794, 74-1795.
 United States Court of Appeals,
Sixth Circuit.
 April 16, 1975.
 
 Smith H. Tyler, Jr., Gary D. Bullock, Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, for defendant-appellant in No. 74-1794.
 C. J. DeMichelis, Philip J. Marsick, Cincinnati, Ohio, for defendant-appellant in No. 74-1795.
 Milton M. Bloom, Cincinnati, Ohio, William A. Miller, Louisville, Ky., for plaintiff-appellee.
 Before CELEBREZZE and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.
 WILLIAM E. MILLER, Circuit Judge.
 
 
 1
 This is a diversity action instituted by Trinity Universal Insurance Company (Trinity) against Cincinnati Insurance Company (Cincinnati) and Joe L. Chittum, individually and as executor of the estate of his wife, Mary Ruth Chittum, under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., seeking a declaration of rights and duties of the parties with respect to claims growing out of a collision of vehicles.
 
 
 2
 The basic facts are not in dispute. Joe L. Chittum and Mary Ruth Chittum were executive officers, stockholders and employees of Moore & Chittum, Inc. The genesis of the present litigation stems from a collision between two automobiles on a Kentucky highway, in which the car operated by Mrs. Chittum and owned by her husband, was involved. At the time of the accident Mrs. Chittum was on a trip for a dual purpose, one objective being personal and the other to perform a mission for the corporation of Moore & Chittum.
 
 
 3
 As a result of the accident, Mrs. Chittum was killed and the two individuals in the other car (Abell and Millett) were seriously injured. In ensuing litigation in the Kentucky courts, the court of appeals of that state held that Mr. Chittum, Mrs. Chittum, and Moore & Chittum, Inc. were all three jointly liable for any damages resulting from the accident. Chittum v. Abell, 485 S.W.2d 231 (Ky.1972). Mrs. Chittum's estate was held liable because of her own negligence. The liability of Mr. Chittum was based on the family purpose doctrine. The corporation's liability was founded upon the doctrine of respondeat superior, in that Mrs. Chittum was also acting on behalf of Moore & Chittum, Inc. in performing a mission on its behalf. Abell's recovery was fixed at $250,000.00 and Millett's at $116,500.00. By written agreement between Trinity and Cincinnati, the two insurance companies involved, the judgments have been paid, with the companies reserving the right to have their respective legal responsibilities determined in the present proceeding.[1]
 
 
 4
 There are three relevant insurance policies. The primary policy is a homeowner's automobile policy issued by Cincinnati to Joe L. Chittum as the named insured and naming Mary Ruth Chittum and Moore & Chittum, Inc., as additional insureds. This policy is undisputably the primary insurance available for satisfaction of the claims arising out of the accident. The policy contains a limit of $100,000 per person, which has been duly paid and the policy released from any further liability. This leaves open the question of which, if either, insurance company is required to pay the liability in excess of $100,000 paid to each injured party under the homeowner's policy.
 
 
 5
 The second relevant policy is a general liability policy issued by Trinity to Moore & Chittum, Inc. as the named insured. It had a limit of $100,000 per individual for any one accident, and thus provided additional protection to Moore & Chittum for liability in excess of the limits of the Cincinnati homeowner's policy. The issue under this policy is whether it provides the same coverage of Mrs. Chittum.
 
 
 6
 The final insurance policy relevant to the case is a commercial catastrophe policy issued by Cincinnati to Moore & Chittum, Inc. as the named insured. This policy had limits of $1,000,000 and was to be effective only after all "underlying insurance" was exhausted. It specified the Trinity general liability policy as underlying insurance. It is therefore necessary to determine the coverage of the Trinity policy in order to ascertain the point at which the catastrophe policy takes over. This is true since the Trinity policy can only be considered as "underlying insurance" to the extent of the coverage provided by it. If the underlying policy excludes coverage for the particular occurrence in question, or if that coverage is exhausted, the catastrophe policy is liable for any excess over the homeowner's policy up to $1,000,000, subject to its own exclusions. The catastrophe policy contains exclusionary language which Cincinnati contends excludes coverage of Mr. and Mrs. Chittum. It thus becomes necessary to interpret the exclusionary clauses of two complementary insurance policies.
 
 
 7
 Cincinnati argues that the following provisions of the Trinity insurance policy are ambiguous or inconsistent and that the policy should therefore not be interpreted as establishing an exclusion of Mrs. Chittum:
 
 
 8
 "PERSONS INSURED
 
 
 9
 Each of the following is an Insured under this insurance to the extent set forth below:
 
 
 10
 (b) any partner or executive officer thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the named insured;
 
 None of the following is an insured:
 
 11
 (iii) an executive officer with respect to an automobile owned by him or by a member of his household; . . ." (Italics ours.)
 
 
 12
 Cincinnati points out that one provision defines a person in Mrs. Chittum's position as an insured while another provision seemingly would exclude her. Since under Ohio law an insurance policy subject to different interpretations will be given that interpretation most favorable to the insured, especially in the case of exclusions and exceptions from coverage, it is urged by Cincinnati that the Trinity general policy should be construed as covering Mrs. Chittum. Great American Mutual Indemnity Co. v. Jones, 111 Ohio St. 84, 144 N.E. 596 (1924); Butche v. Ohio Casualty Insurance Company, 174 Ohio St. 144, 187 N.E.2d 20 (1962); American Finance Corp. v. Fireman's Fund Insurance Co., 15 Ohio St.2d 171, 239 N.E.2d 33 (1968); Preferred Accident Ins. Co. v. Rhodenbaugh, 160 F.2d 832 (6th Cir. 1947).
 
 
 13
 This rule of construction does not become applicable until an ambiguity is found in the policy which makes it susceptible of conflicting interpretations which cannot reasonably be reconciled. Bright v. Ohio Casualty Ins. Co., 444 F.2d 1341 (6th Cir. 1971). The district court was unable to find any such ambiguity in the provisions of the Trinity policy.
 
 
 14
 The provisions are obviously designed to cover any executive officer on company business driving an automobile not owned by the company, unless the automobile is owned by the executive or a member of his family. The rationale for structuring the coverage in this manner is understandable. The provisions protect corporate officers while they are driving automobiles not owned by the company but at the same time prevent the possible abuse of company officers' wrongfully transferring their own personal risks to the company's insurance by erroneously insisting that they are on incidental company business when a loss occurs. Such abuses could result in the company's insurance having to bear losses which would ordinarily be covered by the officers' personal insurance.
 
 
 15
 The provision extending coverage to non-owned vehicles is clearly limited by the phrase "to the extent set forth below." The wording which directly follows specifically excludes coverage with respect to vehicles owned by executive officers or members of their families.
 
 
 16
 A Louisiana court of appeals has found that a virtually identical policy issued to the City of Natchitoches, Louisiana, as the named insured, was clear and unambiguous. It was there held that the policy did not extend coverage to the police chief of the city operating his personally owned vehicle on city business as an escort in a funeral procession. Bouis v. Employers Liability Assurance Corp., 160 So.2d 36 (La.App., 1963).[2] We think that the Bouis decision is well reasoned and is persuasive authority in this case. As Mrs. Chittum was driving a car owned by her husband, a member of her household, she was not covered under the terms of the Trinity policy. This result, we believe, is a reasonable reconciliation of provisions of the policy which are only in apparent conflict.
 
 
 17
 Having reached this conclusion, it follows that the Cincinnati catastrophe policy covers all liability over and above the coverage of the basic homeowner's policy, unless Mrs. Chittum is excluded from coverage under the terms of the catastrophe policy itself. We turn therefore to the question of coverage of Mrs. Chittum under the Cincinnati catastrophe policy.
 
 
 18
 The district court found the exclusionary language in the catastrophe policy to be "so indefinite and ambiguous, as applied to the factual situation in this case, as to be useless." Construing the policy most strongly against the insurer, the court thus refused to find a valid exclusion established by the relevant provisions of the catastrophe policy. With this particular conclusion of the district court we are unable to agree. Nevertheless, the exclusion, properly construed, is not sufficiently broad in our view to exclude coverage of Mrs. Chittum.
 
 
 19
 The relevant language of the catastrophe policy is as follows:
 
 
 20
 Section IV-Definitions.
 
 
 21
 1. "Named Insured" and "Insured".
 
 
 22
 The unqualified word "Insured", wherever used (including endorsements forming a part hereof), means the Named Insured and also:
 
 
 23
 (d) any person while using an automobile or aircraft owned by or loaned to the Named Insured or hired for use in behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual use of the automobile or aircraft is by the Named Insured or with the Named Insured's permission, and any executive officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft not owned by the Named Insured in the business of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply under division (d) of this insuring agreement;
 
 
 24
 2. with respect to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or a lessee thereof other than the Named Insured, or to any agent or employee of such owner or lessee; . . . (Italics ours.)
 
 
 25
 Thus included within the definition of "insured" is any "executive officer . . . of the Named Insured" using an "automobile . . . not owned by the Named Insured in the business of the Named Insured." This language, without more, would leave no doubt that Mrs. Chittum is covered under the policy. Does the next sentence so narrow or restrict this general language as to exclude Mrs. Chittum? The policy language goes on to state that the above coverage for those other than the named insured does not apply "to the owner or a lessee" of "any automobile hired by or loaned to the Named Insured" or to "any agent or employee of such owner or lessee." Although it may be conceded that the technical language of this insurance policy lacks the precision and clarity of a college textbook, the intent of the language on close scrutiny becomes clear enough. The exclusion was evidently intended to take effect when both of two conditions were met: (1) that the automobile involved was "hired by or loaned to the Named Insured"; and (2) that the person or other entity sought to be covered was the "owner or a lessee" of the automobile, or the "agent or employee" of such owner or lessee.
 
 
 26
 The Cincinnati policy does not define the terms "hired" or "loaned." Adopting the commonly understood meaning of these terms, the only possible indication that the Chittum automobile was hired by the corporation is the fact that Moore & Chittum paid for the gasoline with which the car was filled at the start of the trip. This fact alone is not enough to bring the transaction within the common and ordinary meaning of the term "hired."
 
 
 27
 Neither can it be found that the automobile was "loaned" to the corporation. The fact that an automobile is being used on company business, standing alone, is insufficient to show that it was "loaned" to the company. The Seventh Circuit, in a similar situation, refused to find that an automobile was "loaned to" a corporation within the meaning of that term as used in an insurance exclusion clause. Faribault Canning Co. v. Northwestern National Casualty Co., 298 F.2d 58 (7th Cir. 1961). See also Continental Casualty Co. v. Hartford Accident & Indemnity Co., 213 Cal.App.2d 78, 28 Cal.Rptr. 606 (1963), Government Employees Ins. Co. v. St. Paul Fire & Marine Ins. Co., 243 Cal.App.2d 186, 52 Cal.Rptr. 317 (1966).
 
 
 28
 Absent another definition in the policy of the language "automobile hired by or loaned to the Named Insured," we hold that this wording adequately establishes that the car driven by Mrs. Chittum was not one "hired by or loaned to" Moore & Chittum within the meaning of the policy.
 
 
 29
 Even assuming that this condition has been met, it would still be necessary, in order to find that Mrs. Chittum comes within the exclusion, to show that she could qualify under the second condition required to activate the exclusion.
 
 
 30
 As Mrs. Chittum was not the owner of the car involved in the accident, it would be necessary to show that she was the agent or employee of her husband, the car's owner. It is conceded that Mrs. Chittum was not her husband's employee. The term "agent" is not defined in the catastrophe policy. The Restatement (Second) of Agency § 1 (1957) sets forth the following definition:
 
 Agency; Principal; Agent
 
 31
 (1) Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.
 
 
 32
 (2) The one for whom action is to be taken is the principal.
 
 
 33
 (3) The one who is to act is the agent.
 
 
 34
 There is no indication that any fiduciary relationship existed with respect to the trip in question between Mrs. Chittum and her husband. It is apparent that if Mrs. Chittum was the agent of anyone on the trip, she was the agent of Moore & Chittum. Cincinnati would argue that sufficient agency is established under the family purpose doctrine because she was at the time of the accident on her way to Tennessee for a vacation. It is true that the family purpose doctrine is founded upon the legal fiction of an agency relationship, a fiction developed by the courts in the law of torts. Unless clearly indicated, it has no place in defining the meaning of terms used in contracts of insurance. Assuming that the parties intended the term "agent" as used in the policy to be understood and applied according to its ordinary signification, we find that Mrs. Chittum was not the agent of her husband in driving the car on her own vacation trip.
 
 
 35
 It necessarily follows that the Cincinnati catastrophe policy extended coverage to Mrs. Chittum while on the trip which resulted in the underlying liability in this case. As the Trinity policy effectively excluded Mrs. Chittum from its coverage, Cincinnati, through its catastrophe policy, is responsible for all liability in excess of the $100,000 limits of the Cincinnati homeowner's policy. Our finding in this regard renders moot the issue of estoppel raised on appeal by Mr. Chittum.[3]
 
 
 36
 For the reasons stated above the judgment of the district court must be
 
 
 37
 Affirmed.
 
 
 
 [1]
 The Kentucky court found that Mrs. Chittum's estate must indemnify the corporation to the extent of any liability collected from Moore & Chittum, Inc. Trinity therefore contends that, having contributed to a settlement as the insurer of the corporation, it is entitled to recover this amount from Cincinnati which insured Mrs. Chittum
 
 
 [2]
 The analogous portion of the Bouis policy read as follows:
 III. Definition of "Insured".
 The unqualified "insured" includes the named insured and also includes * * * (2) under coverages A and C, (which are the coverages for bodily injury and property damage caused by the operation of an automobile) * * * any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. The insurance with respect to any person or organization other than the named insured does not apply under division (2) of this insuring agreement:
 (e) with respect to any non-owned automobile, to any executive officer, if such automobile is owned by him or a member of the same household.
 
 
 [3]
 Mr. Chittum argued that Cincinnati was estopped from denying that its policy covered the liability in this case. This theory was based upon the fact that Cincinnati first represented Chittum in the state court litigation, admitting that its policy provided coverage for Chittum, its only protest being that the Trinity policy should be first exhausted. Cincinnati later reversed its position and contended that it was not responsible even for the excess over the Trinity coverage